SEYFARTH SHAW LLP
Kathleen Cahill Slaught (SBN 168129)
kslaught@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:   (415) 397-2823
Facsimile:   (415) 397-8549

Ryan R. Tikker (SBN 312860)
rtikker@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
UNITEDHEALTHCARE INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JOHN ATTENELLO MD APC., | Case No. _____ |
| Plaintiff, | **DEFENDANT'S NOTICE OF REMOVAL** |
| v. | |
| UNITED HEALTHCARE INSURANCE COMPANY, | Action Filed: February 10, 2025 |
| Defendant. | [*Filed concurrently with Civil Cover Sheet and Declaration ISO*] |
| | Removed from the SUPERIOR COURT OF CALIFORNIA, LOS ANGELES COUNTY, Case No. 25BHSC00190 |

316679713v.1

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT AND TO ALL PARTIES:**

Defendant UnitedHealthcare Insurance Company ("UHIC" or "Defendant"), by and through their attorneys, Seyfarth Shaw LLP, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446, hereby remove this action, which was filed in the Superior Court of California, Los Angeles County, Case No. 25BHSC00190. Defendant states:

# I.      BACKGROUND

1.      On February 10, 2025, Plaintiff Dr. John Attenello MD APC  ("Plaintiff") commenced a civil action against Defendant in the Superior Court of California, Los Angeles County, Case No. 24BHSC00190, captioned *Dr. John Attenello MD APC v. United Healthcare Insurance Co.* ("State Court Action" or "Complaint").

2.      Defendant was served with the Complaint on February 12, 2025.  A copy of all "process, pleadings and orders" received by Defendant in the State Court Action is attached as **Exhibit A**.  *See* 28 U.S.C. § 1446(a).  Upon information and belief, no other related process, pleadings, or orders have been served.

3.      This Notice of Removal is timely, as it is filed thirty days after of service of the Complaint.  *See* 28 U.S.C. § 1446(b).

# II.     GROUNDS FOR REMOVAL

## A.      This Case Is Removable Based On Federal Question And Federal Officer Removal.

4.      This Court has federal question jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  "For statutory purposes, a case can 'aris[e] under' federal law in two ways.  Most directly, a case arises under federal law when federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (*citing Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).  Such claims "account[ ] for the vast bulk of suits

that arise under federal law." *Id.* (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)).

5.     While it is well-settled that a case may not be removed to federal court on the basis of a federal defense, "[t]here does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000); *Franchise Tax. Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983). When the doctrine of complete preemption is applicable, "any claim purportedly based on [a] preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 24).

6.     Plaintiff asserts a purported state law claim against Defendant, which centers on Defendant's alleged obligation to issue additional reimbursements for the disputed benefit claim(s) under a health plan administered or offered by Defendant. (Compl. p. 2.) Plaintiff contends that Defendant owes Plaintiff money for "UNDERPAID EMERGENT/POST STABILIZATION EMERGENT CARE FOR PATIENT BASED ON STATE COMMON LAW," "IMPLIED IN LAW, IMPLIED AND VERBAL CONTRACT," "UNJUST ENRICHMENT AND DETRIMENTAL RELIANCE," and "(Health & Saf. Code, § 1343, subd. (e)(1))," also known as California's Knox-Keene Health Care Service Plan Act ("Knox-Keene Act"). (Compl., p. 2.)

7.     Plaintiff then calculates the amount owed to it as the "AMOUNT BILLED MINUS AMOUNT ALLOWED PLUS 15% INTEREST PER ANNUM AS PER H&S CODE 1371.35, 28 CCR § 1300.71.4." (Compl., p. 3.)

8.     Plaintiff's claims, when examined, arise under federal law. In fact, Plaintiff attached to the Complaint an "AARP Supplemental and Personal Health" explanation of benefits document discussing the "Medicare Paid Amount," "the Medicare Approved" amount, and a "Medicare Statement," regarding the dates of service at issue in the

Complaint.  (Compl., p. 22.)

### i.    *Plaintiff's Complaint and Claim for Benefits is Inextricably Intertwined with a Medicare benefits determination.*

9.    In its Complaint, Plaintiff challenges UHIC's benefits determination under a Medicare benefits claim, thus Plaintiff's claims arise under the Medicare Act.  (*See* Compl., p. 22.)  Under *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107 (9th Cir. 2003), there are two circumstances in which a claim "arises under" the Medicare Act: (1) when claims are "inextricably intertwined" with a Medicare benefits determination, and (2) when both the standing and the substantive basis of the claim is the Medicare Act.  *Id.* at 1112 (citing *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984)).  "Most courts forgo the 'standing and substantive basis' test in favor of the 'inextricably intertwined' test where plaintiffs do not invoke Medicare in their complaints."  *Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F. Supp. 3d 1225, 1232 (C.D. Cal. 2016).  Both state law and federal law claims brought under different statutes can "arise under" the Medicare Act if they are "inextricably intertwined" with a Medicare benefits decision.  *Kaiser*, 347 F.3d at 1113-15; *see also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1142 (9th Cir. 2010).

10.    At bottom, Plaintiff's claim is for benefits in excess of what UHIC determined was payable, while acting as a Medicare Advantage Organization ("MAO").  (*See* Declaration of Jane Stalinski in Support of Removal, ("Stalinski Decl.") ¶¶ 5-7 and Exhibit A thereto); *see Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 500 (9th Cir. 1996).  Therefore, Plaintiff's claims are inextricably intertwined with a claim for Medicare benefits.  *See Heino v. U.S. Center for Medicare*, 709 F. Supp. 3d 1239, 1250 (D. Or. Dec. 22, 2023).

11.    This Court has supplemental jurisdiction over any additional state law claim Plaintiff may attempt to assert, as such claim will arise from the same nucleus of operative facts, such "that they form part of the same case or controversy under Article III of the United States Constitution" as the claims in the first cause of action.  28 U.S.C.

§ 1367(a); *see also Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F. 4th 1179, 1186 (9th Cir. 2022) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.").

> ii.    *Plaintiff's Complaint Relies On the Knox-Keene Act, Despite It Being Inapplicable To United.*

12.    In its Complaint, Plaintiff relies on the applicability of the Knox-Keene Health Care Service Plan Act ("Knox-Keene Act").  (*E.g.* Compl. pp. 2; 3.)  However, the California Court of Appeals, as well as the Department of Managed Health Care ("DMHC"), the regulatory agency responsible for the oversight and enforcement of the Knox-Keene Act, have confirmed that UHIC is not a "Health Care Service Plan" or subject to the Knox-Keene Act.  *See Nissanoff v. United Healthcare Insurance Co.*, 2024 WL 5324444, 329 Cal.Rptr.3d 156, 108 Cal.App.5th Supp.1 (2024); **Exhibit B**, 4/16/24 Letter.)

13.    Based on the inapplicability of the Knox-Keene Act, Plaintiff's causes of action rise and fall with federal law (the Medicare Act).

> iii.    *This Case Is Removable Based On Federal Officer Removal.*

14.    In addition to the federal questions presented by Plaintiff's Complaint, the Complaint is also removable pursuant to 28 U.S.C. § 1442(a)(1).

15.    28 U.S.C. § 1442(a)(1), the federal officer removal statute, permits removal by "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." *See also Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) (removal was proper under the federal officer removal statute where the plaintiff sued for acts performed under the direction of the federal government).

16.    This Court has federal officer removal jurisdiction based on, for example, UHIC's participation in the Medicare program as a government contractor and the

government's "detailed regulation, monitoring [and] supervision" of its Medicare-related activities. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).

17.    To invoke federal officer removal, the removing party must allege that (1) it is a "person" under the removal statute, (2) there is a causal nexus between the claims and the defendant's action taken at the direction of a federal officer, and (3) that it has a colorable federal defense to the claims. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018); *Leite*, 749 F.3d at 1122.

18.    All three prongs are met here. (*See* Stalinski Decl., ¶¶ 6-8.)

19.    **For the first prong**, UHIC is a corporation, which are persons in the meaning of the statute. *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("The courts of appeals have uniformly held that corporations are "person[s]" under § 1442(a)(1). We agree and, therefore, the Blues have satisfied the first requirement for removal under § 1442(a)(1).") (citations omitted).

20.    **For the second prong**, there is a causal nexus between Plaintiff's claims and Defendant's alleged actions taken at the direction of a federal officer. A causal nexus exists where a person is acting under a federal officers and the actions the person takes are causally connected to the lawsuit. *See Goncalves*, 865 F.3d at 1244-45. "For a private entity to be acting under a federal officer, the private entity must be involved in an effort to assist, or to help carry out, the duties or tasks of the federal superior. The relationship typically involves subjection, guidance, or control, but it must go beyond simply complying with the law, even if the laws are highly detailed and thus leave the entity highly regulated. Thus, [t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks." *Id.* at 1245 (citations and internal quotation marks omitted).

21.    Title XVIII of the Social Security Act, 79 Stat. 291, *as amended*, 42 U.S.C. § 1395 *et seq.*, commonly known as the Medicare Act establishes a federally subsidized

health insurance program to be administered by the Secretary of the Department of Health and Human Services (the "Secretary").  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).  The Act is administered by the Secretary through the Centers for Medicare and Medicaid Services ("CMS").  *See Regional Medical Transport, Inc. v. Highmark, Inc*., 541 F. Supp. 2d 718, 720 (E.D. Pa. 2008).

22.    As relevant here, under Part C of the Medicare Act, the Medicare Advantage Program, Medicare beneficiaries can opt out of traditional coverage under Medicare Parts A and B.  Medicare Advantage Plans offer optional Medicare health plan choices provided by private companies.  *See Mann v. Reeder*, 2010 WL 5341934, at *3 (W.D. Ky. 2010).  However, like traditional Medicare coverage, Medicare Advantage Plans are regulated, monitored, and directly controlled by the Secretary through CMS.  *See id.*; 42 C.F.R. §§ 422.62-422.74.

23.    "[T]he majority of district courts" applying the *Goncalves* test for determining whether a person is acting under a federal office "have held that MAOs administering [Medicare] Part C benefits fall within the category of highly regulated private contractors described in Watson and thus are 'acting under' CMS in a manner that entitles them to removal under § 1442(a)(1).  By administering Medicare benefits through the private market, [an MAO] helps CMS 'fulfill [a] basic governmental task.'" *Inchauspe v. Scan Health Plan*, 2018 WL 566790, at *5 (C.D. Cal. Jan. 23, 2018) (citation omitted); *see also Escarcega v. Verdugo Vista Operating Co.*, 2020 WL 1703181 (C.D. Cal. Apr. 8, 2020) (court upheld jurisdiction under federal officer removal statute, despite the fact that the defendant was a downstream entity rather than an MAO, because they derived from the entity's relationship with an MAO); *see also MHA, LLC v. Amerigroup Corp.*, 2021 WL 226110, at *7 (D.N.J. Jan. 21, 2021) (court upheld jurisdiction under federal officer removal statute and noted that "[t]he government's essential goal here is not the provision of Medicare Advantage Plans as such, but provision of Medicare coverage.  It is that essential function that is being discharged through the alternative means of employing Amerigroup."); *Beaumont Foot Specialists,*

DEFENDANT'S NOTICE OF REMOVAL

*Inc. v. United Healthcare of Tex., Inc.*, 2015 WL 9257026, at \*5 (E.D. Tex. Dec. 14, 2015) (court upheld jurisdiction under federal officer removal statute noting that the defendants "acted under a federal officer or agency when they engaged in the complained-of conduct"); *WellCare of N.Y., Inc*., 769 F. Supp. 2d 250, 259 (S.D.N.Y. 2011) (court upheld jurisdiction under federal officer removal statute and noting that "[t]he complex federal regulatory scheme applicable to MA Organizations similarly calls for the hope of uniformity that a federal forum offers on federal issues.") (internal citation omitted).

24.    UHIC contracts as a MAO with the federal Department of Health and Human Services ("HHS") Centers for Medicare and Medicaid Studies ("CMS") to administer federal Medicare insurance benefits under the federal Medicare Advantage ("MA") program.  (Stalinski Decl. ¶ 7.)  MAOs, and the Medicare Advantage Plans ("MA Plans") they administer, are regulated by CMS.  Every MA Plan must be approved by CMS, and must be administered consistent with CMS guidance.

25.    Accordingly, UHIC acts under federal direction when administering Medicare Part C health programs.

26.    Moreover, the requisite causal connection exists here.

27.    Plaintiff's Complaint directly challenges United's administrative of a Medicare Advantage Plan, and directly challenges the determination of the "Medicare Paid Amounts," under the plan.  (*See* Compl., p. 22.)

28.    Additionally, any obligation to issue reimbursements for patients/participants covered by MA Plans turns on the plan terms (*i.e.* the administration of Medicare Part C benefits).

29.    Thus, the "very act" that Plaintiff challenges—payments of MA Plan benefits (*i.e.* administration of Medicare Part C)—is the precise action taken under direction of the federal government.

30.    **For the third prong**, Defendant has colorable federal defenses because the Medicare Act preempts "any State law or regulation (other than State licensing laws or

DEFENDANT'S NOTICE OF REMOVAL

State laws relating to plan solvency) with respect to [MA] plans which are offered by MA organizations under" Medicare Part C.  42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. 422.402.

31.    Additionally, the Medicare Act requires administrative exhaustion for claims related to MA Plans under Medicare Part C.  42 U.S.C. § 1395w-22(g) (setting forth requirements for determinations as to plan participants' entitlement to benefits); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 914, 919–20 (9th Cir. 2022) (holding that by enacting § 1395w-22(g) "Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare" and that "[b]ecause [plaintiff] failed to exhaust its administrative remedies and has not shown any basis for excusing that requirement, the district court properly dismissed [the] action [seeking benefits under Medicare Advantage plan] for lack of subject matter jurisdiction").

32.    Plaintiff has not alleged that administrative remedies were exhausted.  Nor has Plaintiff alleged any reasons absolving exhaustion obligations.

33.    Accordingly, this entire matter is removable pursuant to 28 U.S.C. § 1442(a).  *See Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin. Agency*, 2005 WL 44524, at *2 (E.D. Pa. Jan. 10, 2005).

### iv.    The Disputed Claims May Post-Date The Enactment Of The Federal No Surprises Act ("NSA").

34.    Most group health plans "have a network of providers and health care facilities (participating providers or preferred providers) who agree by contract to accept a specific amount for their services."  Requirements Related to Surprise Billing: Part I, 86 Fed. Reg. 36,872, 36,874 (July 13, 2021).  "By contrast, providers and facilities that are not part of a plan or issuer's network (nonparticipating providers) usually charge higher amounts" than the negotiated in-network rates.  *Id.*  When an individual receives care out-of-network, the plan may decline to pay for the services based on the benefit plan design and coverage, or could pay an amount lower than billed charges, leaving the patient responsible for the balance of the bill, known as "balance billing."  *Id.*

35.     Congress enacted the NSA in December 2020, which became effective on January 1, 2022.  Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (2020).  The NSA makes parallel amendments to the Public Health Service Act (administered by the Department of Health and Human Services), ERISA (administered by the Department of Labor), and the Internal Revenue Code (administered by the Internal Revenue Service within the Department of the Treasury).

36.     In addition to setting rules for determining a patient's payment obligation for an out-of-network emergency services, the NSA establishes a procedure for resolving disputes between providers and plans (or insurers) over the amount reimbursed for such a service, the "qualifying payment amount."  *See, e.g.,* 42 U.S.C § 300gg-111(a)(1)(C)(iv), (b)(1)(C).

37.     Recently, the court in *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, considered the NSA and held that it "establishes a procedure for the payment of out-of-network providers by health insurers."  2023 WL 5815821, at *2 (D.N.J. Sept. 8, 2023) (citing 42 U.S.C. § 300gg-111(c)(1)(B)).  The court also confirmed that an arbiter entity is "prohibited from considering usual and customary charges, the amount the provider would have billed for the item or service had the Act not applied, or the reimbursement rates for the item or service by a public payor."  2023 WL 5815821, at *3 (citing 42 U.S.C. § 300gg-111(c)(5)(D)).   Here, Plaintiff is seeking benefits at amounts—and using reimbursement methodologies—that would not properly considered under the NSA arbitration process.

38.     In sum, because Plaintiff likely places emergency claims that post-date the enactment of the NSA in dispute, the NSA will likely be part of this case.

**B.     VENUE AND NOTICE**

39.     Venue is proper in this District and Division because, pursuant 28 U.S.C. § 84(c)(2), this District and Division embrace the Superior Court of California, Los Angeles County, the place where the removed State Court Action has been pending.  28

DEFENDANT'S NOTICE OF REMOVAL

U.S.C. § 1441(a).

40.    Promptly upon the filing of this Notice of Removal, Defendant shall file a Notice of Filing of Notice of Removal, with a copy of the Notice of Removal, with the Superior Court of California, Los Angeles County and will serve a copy thereof on Plaintiff through its counsel, pursuant to 28 U.S.C. 1446(d).  A copy of this notice is attached hereto at **Exhibit C**.

41.    Removal is also proper because Defendant, the only named and non-fictitious defendant, consents to removal.

**C.        RESERVATION OF RIGHTS**

42.    Defendant denies the allegations contained in Plaintiff's Complaint and files this Notice of Removal without waiving any defenses, objections, exceptions, and/or obligations that may exist in either state or federal court.

43.    Defendant does not concede in any way that (i) Plaintiff has asserted a claim upon which relief can be granted, (ii) Plaintiff has standing to sue, and/or (iii) recovery of any of the amounts sought is authorized or appropriate under the terms of the operative health benefit plans.

44.    Defendant reserves the right to amend or supplement this Notice of Removal.  Further, to the extent any questions arise as to the propriety of the removal of the State Court Action, Defendant expressly requests the opportunity to present a brief, oral argument and any further evidence necessary in support of the position that this action is removable.

WHEREFORE, Defendant requests that the above-described action pending against it be removed to this District Court and request all other relief, at law or in equity, to which it is justly entitled.

///

///

///

///

316679713v.1

1    DATED: March 13, 2025                  SEYFARTH SHAW LLP

By: */s/ Kathleen C. Slaught*
       Kathleen C. Slaught
       Ryan R. Tikker

       Attorneys for Defendant
       UNITEDHEALTHCARE
       INSURANCE COMPANY

DEFENDANT'S NOTICE OF REMOVAL

316679713v.1

# EXHIBIT A

**Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
02/12/2025
CT Log Number 548394975

## Service of Process Transmittal Summary

**TO:**   Rebecca Thompson, Legal Svs Spclst
UnitedHealth Group Incorporated (111504190770700600)
1 HEALTH DRIVE - MN103-0400
EDEN PRAIRIE, MN 55344

**RE:**   **Process Served in California**

**FOR:**   UnitedHealthcare Insurance Company (301800099745000000048)  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Dr. John Attenello MD APC vs. UNITEDHEALTHCARE INSURANCE COMPANY |
| **CASE #:** | 25BHSC00190 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/12/2025 at 08:39 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Administrative Assistant  legalmail@uhg.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 8775647529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Wed, Feb 12, 2025
**Server Name:**                             DROP SERVICE

| Entity Served | UNITED HEALTHCARE INSURANCE COMPANY |
|---|---|
| Case Number | 25BHSC00190 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



| **SC-100** | **Plaintiff's Claim and ORDER
to Go to Small Claims Court** |

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles
02/10/2025
David W. Slayton, Executive Officer / Clerk of Court
By: _____ T. Long _____ Deputy

## Notice to the person being sued:

- You are the defendant if your name is listed in ② on page 2 of this form or on form SC-100A. The person suing you is the plaintiff, listed in ① on page 2.
- You and the plaintiff must go to court on the trial date listed below. If you do not go to court, you may lose the case. If you lose, the court can order that your wages, money, or property be taken to pay this claim.
- Bring witnesses, receipts, and any evidence you need to prove your case.
- Read this form and all pages attached to understand the claim against you and to protect your rights.

## Aviso al Demandado:

- Usted es el Demandado si su nombre figura en ② de la página 2 de este formulario, o en el formulario SC-100A. La persona que lo demanda es el Demandante, la que figura en ① de la página 2.
- Usted y el Demandante tienen que presentarse en la corte en la fecha del juicio indicada a continuación. Si no se presenta, puede perder el caso. Si pierde el caso, la corte podría ordenar que le quiten de su sueldo, dinero u otros bienes para pagar este reclamo.
- Lleve testigos, recibos y cualquier otra prueba que necesite para probar su caso.
- Lea este formulario y todas las páginas adjuntas para entender la demanda en su contra y para proteger sus derechos.

*Fill in court name and street address:*

**Superior Court of California, County of**
**Los Angeles**

**Beverly Hills Courthouse**
**9355 Burton Way**
**Beverly Hills, CA 90210**

*Court fills in case number when form is filed.*

**Case Number:**   25BHSC00190

**Case Name:**
DR. JOHN ATTENELLO MD APC
vs
UNITED HEALTHCARE INSURANCE COMPANY

### Order to Go to Court

**The people in ① and ② must attend court:** *(Clerk fills out section below.)*

| Trial Date → | Date | Time | Department | Name and address of court, if different from above |
|---|---|---|---|---|
| 1. | 04/04/2025 | 8:30 AM | 304 | |
| 2. | | | | |
| 3. | | | | David W. Slayton, Executive Officer / Clerk of Court |

Date: _02/10/2025_   Clerk, by _____ T. Long _____, Deputy

## Instructions for the person suing:

**Do not use this form to recover COVID-19 rental debt**, which is unpaid rent or other financial obligations under a tenancy due between March 1, 2020, and September 30, 2021. (See Code of Civil Procedure, §1179.02.) To recover COVID-19 rental debt, use form SC-500, *Plaintiff's Claim and ORDER to Go to Small Claims Court.*

- You are the plaintiff. The person you are suing is the defendant.
- **Before** you fill out this form, read form SC-100-INFO, *Information for the Plaintiff,* to know your rights. You can get form SC-100-INFO at any courthouse or county law library, or go to *www.courts.ca.gov/forms.*
- **Fill out pages 2, 3, and 4 of this form.** Make copies of all the pages of this form and any attachments—one for each party named in this case and an extra copy for yourself. Take or mail the original and the copies to the court clerk's office and pay the filing fee. The clerk will write the date of your trial in the box above. Your court may allow electronic filing. Check your local court website for information: *www.courts.ca.gov/find-my-court.htm.*
- You must have someone at least 18—not you or anyone else listed in this case—give each defendant a court-stamped copy of all pages of this form and any pages this form tells you to attach. There are special rules for "serving," or delivering, this form to public entities, associations, and some businesses. See forms SC-104, SC-104B, and SC-104C.
- **Go to court on your trial date listed above.** Bring witnesses, receipts, and any evidence you need to prove your case.

Judicial Council of California, *www.courts.ca.gov*
Rev. January 1, 2024, Mandatory Form
Code of Civil Procedure, §§ 116.110 et seq.,
116.220(c), 116.340(g)

**Plaintiff's Claim and ORDER
to Go to Small Claims Court**

SC-100, Page 1 of 6

→

Plaintiff *(list names):*

| Case Number: |
|---|
| 25BHSC00190 |

**(1)  The plaintiff (the person, business, or public entity that is suing) is:**

Name: Dr. John Attenello MD APC      Phone: 310-972-0922

Street address: 1415 Reeves Street, Unit #303      Los Angeles    CA    90035
         *Street*          *City*      *State*    *Zip*

Mailing address *(if different):* _____
         *Street*          *City*      *State*    *Zip*

Email address *(if available):* John.Attenello@gmail.com

**If more than one plaintiff, list next plaintiff here:**

Name: _____      Phone: _____

Street address: _____
         *Street*          *City*      *State*    *Zip*

Mailing address *(if different):* _____
         *Street*          *City*      *State*    *Zip*

Email address *(if available):* _____

☐ *Check here if more than two plaintiffs and attach form SC-100A.*
☐ *Check here if either plaintiff listed above is doing business under a fictitious name and attach form SC-103.*
☐ *Check here if any plaintiff is a "licensee" or "deferred deposit originator" (payday lender) under Financial Code sections 23000 et seq.*

**(2)  The defendant (the person, business, or public entity being sued) is:**

Name: UNITEDHEALTHCARE INSURANCE COMPANY      Phone: _____

Street address: 185 ASYLUM STREET ~~02/10/2025~~      HARTFORD    CT    06103-0450
         *Street*          *City*      *State*    *Zip*

Mailing address *(if different):* _____
         *Street*          *City*      *State*    *Zip*

**If the defendant is a corporation, limited liability company, or public entity, list the person or agent authorized for service of process here:**

Name: 1505 Corporation C T Corporation System      Job title, if known: _____

Address: 330 N BRAND BLVD SUITE 700      Glendale    CA    91203
         *Street*          *City*      *State*    *Zip*

☒ *Check here if your case is against more than one defendant and attach form SC-100A.*
☐ *Check here if any defendant is on active military duty and write defendant's name here:* _____

**(3)  The plaintiff claims the defendant owes $ 2,500.00** _____ . *(Explain below and on next page.)*

*(Note: A claim for COVID-19 rental debt cannot be made on this form. Use form SC-500, Plaintiff's Claim and ORDER to Go to Small Claims Court (COVID-19 Rental Debt).)*

a. Why does the defendant owe the plaintiff money?
UNDERPAID EMERGENT/POST STABILIZATION EMERGENT CARE FOR PATIENT BASED ON
STATE COMMON LAW IMPLIED IN LAW, IMPLIED IN FACT AND VERBAL CONTRACT
UNJUST ENRICHMENT AND DETRIMENTAL RELIANCE
Health & Saf. Code, § 1343, subd. (e)(1).
Mehrnaz A. DOS 5/1/2024; 5/1/2024 ID# 351703884-1

| Plaintiff *(list names):* | Case Number:<br>25BHSC00190 |
|---|---|

**(3)** b. When did this happen? *(Date):* 5/1/2024; 5/2/2024 _____

If no specific date, give the time period:  *Date started:* _____  *Through:* _____

c. How did you calculate the money owed to you? *(Do not include court costs or fees for service.)*
AMOUNT BILLED MINUS AMOUNT ALLOWED PLUS 15% INTEREST PER ANNUM AS PER H&S
CODE 1371.35, 28 CCR § 1300.71.4,
_____
_____

☐ *Check here if you need more space. Attach one sheet of paper or form MC-031 and write "SC-100, Item 3" at the top.*

**(4)** **You must ask the defendant (in person, in writing, or by phone) to pay you before you sue. If your claim is for possession of property, you must ask the defendant to give you the property. Have you done this?**

☒ Yes    ☐ No    If no, explain why not:
_____
_____
_____
_____

**(5)** **Why are you filing your claim at this courthouse?**
**This courthouse covers the area** *(check the one that applies):*

a. ☒ (1) Where the defendant lives or does business.
(2) Where the plaintiff's property was damaged.
(3) Where the plaintiff was injured.

(4) Where a contract (written or spoken) was made, signed, performed, or broken by the defendant *or* where the defendant lived or did business when the defendant made the contract.

b. ☐ Where the buyer or lessee signed the contract, lives now, or lived when the contract was made, if this claim, is about an offer or contract for personal, family, or household goods, services, or loans. (Code Civ. Proc., § 395(b).)

c. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, if this claim is about a retail installment contract (like a credit card). (Civ. Code, § 1812.10.)

d. ☐ Where the buyer signed the contract, lives now, or lived when the contract was made, or where the vehicle is permanently garaged, if this claim is about a vehicle finance sale. (Civ. Code, § 2984.4.)

e. ☐ Other *(specify):* _____

**(6)** **List the zip code of the place checked in (5) above** *(if you know):* 90292

**(7)** **Is your claim about an attorney-client fee dispute?** ☐ Yes    ☒ No
*If yes, and if you have had arbitration, fill out form SC-101, attach it to this form, and check here:* ☐

**(8)** **Are you suing a public entity?** ☐ Yes    ☒ No
*If yes, you must file a written claim with the entity first.* ☐  A claim was filed on *(date):* _____
*If the public entity denies your claim or does not answer within the time allowed by law, you can file this form.*

Plaintiff *(list names):*

| Case Number: |
|---|
| 25BHSC00190 |

**⑨ Have you filed more than 12 other small claims within the last 12 months in California?**
☐ Yes  ☒ No  *If yes, the filing fee for this case will be higher.*

**⑩ Is your claim for more than $2,500?** ☐ Yes ☒ No
*If you answer yes, you also confirm that you have not filed, and you understand that you may not file, more than two small claims cases for more than $2,500 in California during this calendar year.*

**⑪ I understand that by filing a claim in small claims court, I have no right to appeal this claim.**

I declare under penalty of perjury under the laws of the State of California that the information above and on any attachments to this form is true and correct.

Date: January 12, 2025

John Attenello
_____
*Plaintiff types or prints name here*

▶ *Plaintiff signs here*

Date: _____

_____
*Second plaintiff types or prints name here*

▶ *Second plaintiff signs here*



**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the trial. For these and other accommodations, contact the clerk's office for form MC-410, *Disability Accommodation Request.* (Civ. Code, § 54.8.)

## SC-100  Information for the defendant (the person being sued)

**"Small claims court"** is a special court where claims for $12,500 or less are decided. Individuals, including "natural persons" and sole proprietors, may claim up to $12,500. Corporations, partnerships, public entities, and other businesses are limited to claims of $6,250. (See below for exceptions.*) The process is quick and cheap. The rules are simple and informal. You are the *defendant*—the person being sued. The person who is suing you is the *plaintiff*.

**Do I need a lawyer?** You may talk to a lawyer before or after the case. But you *may not* have a lawyer represent you in court (unless this is an appeal from a small claims case).

**How do I get ready for court?** You don't have to file any papers before your trial, unless you think this is the wrong court for your case. But bring to your trial any witnesses, receipts, and evidence that support your case. And read "Be Prepared for Your Trial" at *www.courts.ca.gov/smallclaims/prepare*.

**What if I need an accommodation?** If you have a disability or are hearing impaired, fill out form *MC-410, Disability Accommodation Request*. Give the form to your court clerk or the ADA/Access Coordinator.

**What if I don't speak English well?** Ask the court clerk as soon as possible for a court-provided interpreter. You may use form *INT-300, Request for Interpreter (Civil)* or a local court form to request an interpreter. If a court interpreter is unavailable for your trial, it may be necessary to reschedule your trial. You cannot bring your own interpreter for the trial unless the interpreter has been approved by the court as a certified, registered, or provisionally qualified interpreter. (See Cal. Rules of Court, rule 2.893, and form *INT-140*.)

**Where can I get the court forms I need?** Go to any courthouse or your county law library, or print forms at *www.courts.ca.gov/forms.*

**What happens at the trial?** The judge will listen to both sides. The judge may make a decision at your trial or mail the decision to you later.

**What if I lose the case?** If you lose, you may appeal. You'll have to pay a fee. (Plaintiffs cannot appeal their own claims.)

- If you were at the trial, file form *SC-140, Notice of Appeal.* You must file within 30 days after the clerk hands or mails you the judge's decision (judgment) on form *SC-200* or form *SC-130, Notice of Entry of Judgment.*

- If you were *not* at the trial, fill out and file form *SC-135, Notice of Motion to Vacate Judgment and Declaration,* to ask the judge to cancel the judgment (decision). If the judge does not give you a new trial, you have 10 days to appeal the decision. File form *SC-140*.

For more information on appeals, see *www.courts.ca.gov/smallclaims/appeals*.

**Do I have options?** Yes. If you are being sued you can:

- **Settle your case before the trial.** If you and the plaintiff agree on how to settle the case before the trial, the plaintiff must file form *CIV-110, Request for Dismissal* or a written and signed settlement agreement with the clerk. Ask the Small Claims Advisor for help.

- **Prove this is the wrong court.** Send a letter to the court *before* your trial explaining why you think this is the wrong court. Ask the court to dismiss the claim. You must serve (give) a copy of your letter (by mail or in person) to all parties. (Your letter to the court must say you have done so.)

- **Go to the trial and try to win your case.** Bring witnesses, receipts, and any evidence you need to prove your case. To have the court order a witness to go to the trial, fill out form *SC-107, Small Claims Subpoena and Declaration,* and have it served on the witness.

- **Sue the person who is suing you.** If you have a claim against the plaintiff, and the claim is appropriate for small claims court as described on this form, you may file *Defendant's Claim* (form *SC-120*) and bring the claim in this action. If your claim is for *more* than allowed in small claims court, you may still file it in small claims court if you give up the amount over the small claims value amount, or you may file a claim for the full value of the claim in the appropriate court. If your claim is for more than allowed in small claims court *and* relates to the same contract, transaction, matter, or event that is the subject of the plaintiff's claim, you may file your claim in the appropriate court and file a motion to transfer the plaintiff's claim to that court to resolve both matters together. You can see a description of the amounts allowed in the paragraph above, titled **"Small Claims Court."**

- **Agree with the plaintiff's claim and pay the money.** Or, if you can't pay the money now, go to your trial and say you want to make payments.

- **Let the case "default."** If you don't settle and do not go to the trial (default), the judge may give the plaintiff what he or she is asking for plus court costs. If this happens, the plaintiff can legally take your money, wages, and property to pay the judgment.

**What if I need more time?**
You can change the trial date if:

- You cannot go to court on the scheduled date (you will have to pay a fee to postpone the trial), *or*
- You did not get served (receive this order to go to court) at least 15 days before the trial (or 20 days if you live outside the county).

Ask the Small Claims Clerk about the rules and fees for postponing a trial. Or fill out form *SC-150* (or write a letter) and mail it to the court *and* to all other people listed on your court papers before the deadline. Enclose a check for your court fees, unless a fee waiver was granted.

 **Need help?**
Your county's Small Claims Advisor can help for free.

Small Claims Court Advisory Program
http://dcba.lacounty.gov
Monday - Friday, 8:00 a.m. – 4:30 p.m.
(213) 974-9759 or (800) 593-8222

Or go to *www.courts.ca.gov/smallclaims/advisor*.

* **Exceptions:** Different limits apply in an action against a defendant who is a guarantor. (See Code Civ. Proc., § 116.220(c).) Limits do not apply in an action to recover COVID-19 rental debt. (See Code Civ. Proc., §§ 116.223 & 1179.02; form SC-500.)

 

## SC-100    Información para el demandado (la persona demandada)

La "Corte de reclamos menores" es una corte especial donde se deciden casos por $12,500 o menos. Los individuos, o sea las "personas físicas" y los propietarios por cuenta propia, pueden reclamar hasta $12,500. Las corporaciones, asociaciones, entidades públicas y otras empresas solo pueden reclamar hasta $6,250. (Vea abajo para las excepciones.*) El proceso es rápido y económico. Las reglas son sencillas e informales. Usted es el Demandado—la persona que se está demandando. La persona que lo está demandando es el Demandante.

**¿Necesito un abogado?** Puede hablar con un abogado antes o después del caso. Pero no puede tener a un abogado que lo represente ante la corte (a menos que se trate de una apelación de un caso de reclamos menores).

**¿Cómo me preparo para ir a la corte?** No tiene que presentar ningún documento antes del juicio, a menos que piense que ésta es la corte equivocada para su caso. Pero lleve al juicio cualquier testigos, recibos y pruebas que apoyan su caso. Y lea "Esté preparado para su juicio" en *www.courts.ca.gov/reclamosmenores/preparese.*

**¿Qué hago si necesito una modificación?** Si tiene una discapacidad o tiene impedimentos de audición, llene el formulario MC-410, *Solicitud de modificaciones para discapacidad.* Entregue el formulario al secretario de la corte o al Coordinador de Acceso/ADA de su corte.

**¿Qué pasa si no hablo bien inglés?** Solicite un intérprete al secretario de la corte lo más pronto posible. Puede usar el formulario INT-300 o un formulario de su corte local. Si no está disponible un intérprete de la corte para su juicio, es posible que se tenga que cambiar la fecha de su juicio. No puede llevar su propio intérprete para el juicio a menos que el intérprete haya sido aprobado por la corte como un intérprete certificado, registrado, o provisionalmente calificado. (Vea la regla 2.893 de las Reglas de la Corte de California, y el formulario INT-140.)

**¿Dónde puedo obtener los formularios de la corte que necesito?** Vaya a cualquier edificio de la corte, la biblioteca legal de su condado, o imprima los formularios en www.courts.ca.gov/smallclaims/forms (página está en inglés).

**¿Qué pasa en el juicio?** El juez escuchará a ambas partes. El juez puede tomar su decisión durante la audiencia o enviársela por correo después.

**¿Qué pasa si pierdo el caso?** Si pierde, puede apelar. Tendrá que pagar una cuota. (El Demandante no puede apelar su propio reclamo.)

- Si estuvo presente en el juicio, llene el formulario SC-140, *Aviso de apelación* (Notice of Appeal). Tiene que presentarlo dentro de 30 días después de que el secretario le entregue o envíe la decisión (fallo) del juez en el formulario SC-200 o SC-130, *Aviso de publicación del fallo* (Notice of Entry of Judgment).
- Si *no* estuvo en el juicio, llene y presente el formulario SC-135, *Aviso de petición para anular el fallo y Declaración* para pedirle al juez que anule el fallo (decisión). Si la corte no le otorga un nuevo juicio, tiene 10 días para apelar la decisión. Presente el formulario SC-140.

Para obtener más información sobre las apelaciones, vea *www.courts.ca.gov/reclamosmenores/apelaciones.*

**¿Tengo otras opciones?** Sí. Si lo están demandando, puede:

- Resolver su caso antes del juicio. Si usted y el Demandante se ponen de acuerdo en cómo resolver el caso antes del juicio, el Demandante tiene que presentar el formulario CIV-110 Solicitud de desestimiento (Request for Dismissal) o un acuerdo de resolución escrito y firmado al secretario de la corte. Pídale al Asesor de Reclamos Menores que lo ayude.

- **Probar que es la corte equivocada.** Envíe una carta a la corte *antes* del juicio explicando por qué cree que es la corte equivocada. Pídale a la corte que despida el reclamo. Tiene que entregar (dar) una copia de su carta (por correo o en persona) a todas las partes. (Su carta a la corte tiene que decir que hizo la entrega.)
- **Ir al juicio y tratar de ganar el caso.** Lleve testigos, recibos y cualquier prueba que necesite para probar su caso. Si desea que la corte emita una orden de comparecencia para que los testigos vayan al juicio, llene el formulario SC-107, *Citatorio de reclamos menores* (Small Claims Subpoena) y entrégueselo legalmente al testigo.
- **Demandar a la persona que lo demandó.** Si tiene un reclamo contra el Demandante, y el reclamo se puede presentar en la corte de reclamos menores, tal como se describe en este formulario, puede presentar el formulario SC-120, *Reclamo del demandado* (Defendant's Claim) y presentarlo en este mismo caso. Si su reclamo excede el límite permitido en la corte de reclamos menores, puede igualmente presentarlo en la corte de reclamos menores si está dispuesto a limitar su reclamo al máximo permitido, o puede presentar un reclamo por el monto total en la corte apropiada. Si su reclamo excede el límite permitido en la corte de reclamos menores y está relacionado con el mismo contrato, transacción, asunto o acontecimiento que el reclamo del Demandante, puede presentar su reclamo en la corte apropiada y presentar una moción para transferir el reclamo del Demandante a dicha corte, para que poder resolver los dos reclamos juntos. Puede ver una descripción de los montos permitidos en el párrafo anterior titulado "Corte de reclamos menores".
- **Aceptar el reclamo del Demandante y pagar el dinero.** O, si no puede pagar en ese momento, vaya al juicio y diga que quiere hacer los pagos a plazos.
- **No ir al juicio y aceptar el fallo por falta de comparecencia.** Si no llega a un acuerdo con el Demandante y no va al juicio (fallo por falta de comparecencia), el juez le puede otorgar al Demandante lo que está reclamando más los costos de la corte. En ese caso, el Demandante legalmente puede tomar su dinero, su sueldo o sus bienes para cobrar el fallo.

**¿Qué hago si necesito más tiempo?** Puede cambiar la fecha del juicio si:

- No puede ir a la corte en la fecha programada (tendrá que pagar una cuota para aplazar el juicio), *o*
- No le entregaron los documentos legalmente (no recibió la orden para ir a la corte) por lo menos 15 días antes del juicio (ó 20 días si vive fuera del condado).

Pregúntele al secretario de reclamos menores sobre las reglas y las cuotas para aplazar un juicio. O llene el formulario SC-150 (o escriba una carta) y envíelo antes del plazo a la corte y a todas las otras personas que figuran en sus papeles de la corte. Adjunte un cheque para pagar los costos de la corte, a menos que le hayan dado una exención.

 **¿Necesita ayuda?** El Asesor de Reclamos Menores de su condado le puede ayudar sin cargo.

Small Claims Court Advisory Program
http://dcba.lacounty.gov
Monday - Friday, 8:00 a.m. – 4:30 p.m.
(213) 974-9759 or (800) 593-8222
O visite *www.courts.ca.gov/reclamosmenores/asesores.*

---

* **Excepciones:** Existen diferentes límites en un reclamo contra un garante. (Vea el Código de Procedimiento Civil, sección 116.220 (c).) Los límites no se aplican a las acciones para reclamar una deuda de alquiler del COVID-19. (Vea el Código de Procedimiento Civil, secciones 116.223 y 1179.02; y el formulario SC-500.)

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Beverly Hills Courthouse<br>9355 Burton Way, Beverly Hills, CA 90210 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/28/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ T. Paez _____ Deputy |
| PLAINTIFF(S):<br>Dr. John Attenello MD APC | |
| DEFENDANT(S):<br>United Healthcare Insurance Company | |
| **NOTICE OF REMOTE APPEARANCES AND EXCHANGE AND SUBMISSION OF EVIDENCE PROTOCOL** | CASE NUMBER:<br>25BHSC00190 |

**NOTICE TO ALL PARTIES IN THIS CASE:**

The Los Angeles Superior Court strongly encourages remote appearances by audio or video for Small Claims cases via LACourtConnect (LACC), its remote courtroom appearance technology. The Court is waiving the recovery fee and providing LACC at no cost to the litigants for hearings beginning September 7, 2021. Offering LACC at no cost will increase the safe access to justice and promote remote appearances. Visit the website at https://www.lacourt.org/lacc to learn more and to register for a remote appearance.

Pursuant to California Code of Civil Procedure, section 116.520, parties in a Small Claims matter have the right to present evidence and witnesses at the hearing to support their respective positions. In order to facilitate remote appearances, the Court has developed a protocol for the exchange of evidence between or among the parties and for submission to the court in advance of the hearing.

Any evidence the party wishes the court to consider must be sent to the opposing party and the court in a method that ensures receipt at least ten (10) days prior to the scheduled hearing pursuant to Standing Order 2020-SJ-015-00 in re Small Claims Protocol for Exchange and Submission of Evidence. See enclosed LASC CIV 278 *Exchange and Submission of Evidence (Small Claims)* form and LASC CIV 279 *Mailing Label.*

Evidence attached to the Plaintiff's Claim and Order to Go to Small Claims Court will be rejected as non-compliance with the Exchange and Submission of Evidence Standing Order.

Evidence will be destroyed after the hearing unless the parties provide a self-addressed envelope with sufficient pre-paid postage at the time of the submission of the evidence.

**NOTICE OF REMOTE APPEARANCES AND EXCHANGE OF EVIDENCE PROTOCOL**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Beverly Hills Courthouse<br>9355 Burton Way, Beverly Hills, CA 90210 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/28/2025<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ T. Paez _____ Deputy |
| PLAINTIFF(S):<br>Dr. John Attenello MD APC | |
| DEFENDANT(S):<br>United Healthcare Insurance Company | |
| **NOTICE OF ONLINE DISPUTE RESOLUTION (ODR) PROGRAM – SMALL CLAIMS** | CASE NUMBER:<br>25BHSC00190 |

NOTICE TO ALL PARTIES IN THIS CASE:

The Court provides a free program to help people resolve their Small Claims case online without a court hearing. This program is called Online Dispute Resolution (ODR).

**Register at** https://my.lacourt.org/odr/small-claims  within five (5) calendar days of receiving of this Notice.  You have until two (2) court days before your hearing to complete ODR.

**Free Help:** You can request free help from a mediator after both sides register for ODR. Mediators can help you use ODR to reach a settlement agreement. Mediators are provided by mediation agencies, not by the Court.

**You can avoid a court hearing.** If you reach a settlement agreement, ODR will put it in the proper form and send it to the Court.  If approved, your hearing will be cancelled.

**You must attend your hearing if you do not have a court-approved Settlement Agreement by two (2) court days before your hearing,** and you were not dismissed from the case. You may appear remotely:
https://my.lacourt.org/laccwelcome See LASC CIV 278 – Exchange and Submission of Evidence (Small Claims).

**Confidentiality:** ODR does not become part of your case file. Judges and court staff cannot see any information about your confidential ODR communications.

Visit the Court's Small Claims ODR website https://my.lacourt.org/odr/small-claims:
- To register for ODR
- To learn more about ODR and helpful resources for resolving your case

NOTICE OF ONLINE DISPUTE RESOLUTION (ODR) PROGRAM – SMALL CLAIMS

LASC SMCL 018 Rev. 12/21
For Mandatory Use

A██████ ████████████████████████ Admission Date: 04/30/2024, Discharge Date: 05/04/2024

# A████████, Mehrnaz

| John D Attenello, MD | Consults ⚠ 🕮 | Date of Service: 05/01/24 2022 |
|---|---|---|
| Physician | Signed | Creation Time: 05/01/24 2022 |
| Orthopedics | | |

**Patient Name:** Mehrnaz A████████
**Age:**
**DOB:**
**Medical Record Number:** ████████
**Date of admission:** 4/30/2024
**Admitting Physician:** John D. Attenello, MD

Consulting physician: John Attenello, M.D., Orthopaedic Surgery

Primary physician: Keyvan Shirazi, MD
Referring physician: No referring provider defined for this encounter.

HPI: Mehrnaz A████████ is a ████ female with a history of hyperlipidemia, borderline diabetes, chronic pain on multiple pain medications, prior history of left femur fracture 20 years ago s/p pin type fixation c/b infection and resultant chronic left hip and femur pain. Pt reportedly sustained a GLF at LAX while on her way to visit her family, landing directly on her left hip. MRI demonstrated occult IT fx. Orthopedic surgery consulted. Pt is a community ambulator without assistive device. Daughter at bedside.

Patient Active Problem List
Diagnosis
- Fall, initial encounter
- H/O degenerative disc disease
- Left hip pain
- Acute low back pain
- Fever, unspecified

Past Medical History:
Diagnosis                                                          Date
- Borderline diabetes
- Hyperlipidemia
- Hypertension

Past Surgical History:
Procedure                                      Laterality      Date
- FEMUR SURGERY                                Left

Social History

Tobacco Use
- Smoking status:          Never

A█████ Mehrnaz ██████████████  Admission Date: 04/30/2024, Discharge Date: 05/04/2024

- Smokeless tobacco:         Never

Substance Use Topics
- Alcohol use:         No
- Drug use:            No

No Known Allergies

No current facility-administered medications on file prior to encounter.

**Current Outpatient Medications on File Prior to Encounter**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| acetaminophen-codeine (TYLENOL #3) 300-30 mg per tablet | Take 1 tablet by mouth every 6 hours as needed for Pain (for severe pain). | 12 tablet | 0 |
| dexlansoprazole (DEXILANT) 60 mg DR capsule | Take 1 capsule by mouth Daily. | | |
| gabapentin (NEURONTIN) 300 mg capsule | Take 1 capsule by mouth Daily. | | |
| LINZESS 290 MCG capsule | Take 1 capsule by mouth Daily. | | |
| naproxen (NAPROSYN) 500 mg tablet | Take 1 tablet by mouth 2 times daily. | | |
| Oyster Shell Calcium 500 MG TABS | Take 1 tablet by mouth 2 times daily. | | |
| OZEMPIC, 0.25 OR 0.5 MG/DOSE, 2 MG/3ML injection (2 mg/3 mL) | Inject 0.5 mg under the skin Once a week. | | |
| rosuvastatin (CRESTOR) 10 mg tablet | Take 2 tablets by mouth Daily. | | |
| SUMAtriptan (IMITREX) 100 mg tablet | Take 1 tablet by mouth as needed for Migraine. | | |
| traMADol (ULTRAM) 50 mg tablet | Take 1 tablet by mouth every 8 hours as needed for Pain. | | |
| VITAMIN D3 50 mcg (2,000 units) capsule | Take 1 capsule by mouth Daily. | | |

Physical Exam:
Vitals:

| | 05/01/24 0100 | 05/01/24 0530 | 05/01/24 0802 | 05/01/24 1642 |
|---|---|---|---|---|
| BP: | | 98/63 | 105/58 | 106/59 |
| Pulse: | | 78 | 71 | 84 |
| Resp: | | 20 | 20 | 20 |

11/19/24, 5:49 PM

A███████ Mehrnaz ███████ · · · · · Admission Date: 04/30/2024, Discharge Date: 05/04/2024

| Temp: | 37.3 °C (99.1 °F) | 37.2 °C (99 °F) | 37.1 °C (98.8 °F) | (!) 38.1 °C (100.5 °F) |
|---|---|---|---|---|
| TempSrc: | | Oral | Oral | Oral |
| SpO2: | | 94% | 97% | 96% |
| Weight: | | | | |
| Height: | | | | |

Body mass index is 27.46 kg/m².

PHYSICAL EXAM:
Vitals: AVSS
General: NAD, A&Ox3
Extremities:
LLE:
- lateral thigh and anteiror knee surgical scars
- No bony or muscular TTP knee, lower leg, ankle, foot, toes
- Thigh and lower leg compartments soft and compressible, no pain with passive F/E of toes.
- positive log roll
- Motor intact to TA/GSC/EHL/FHL
- SILT to S/S/SPN/DPN/T nerves
- 2+ DP pulses, toes WWP, BCR

Independent review of the imaging below was done:
**MRI Hip Left wo Contrast**
Narrative: MRI OF THE LEFT HIP WITHOUT INTRAVENOUS CONTRAST

EXAMINATION DATE AND TIME: 5/1/2024 11:36 AM

REASON FOR STUDY: Left hip fracture.

COMPARISON: CT of the left lower extremity from 5/1/2024.

TECHNIQUE: Multiplanar and multisequence images of the left hip were obtained without intravenous contrast. Additionally, coronal STIR of the entire pelvis was obtained.

FINDINGS:

Images are degraded by patient motion artifact.

Labrum: Labrum intact.

Tendons and Muscles: Tendons intact. No muscle edema or focal muscle atrophy.

Ligaments: Ligamentum teres, transverse acetabular, and capsular ligaments intact.

Osseous Structures and Cartilage: Nondisplaced intertrochanteric left hip fracture. No subluxation. Small foci of high-grade articular cartilage loss overlying the superior medial aspect of the left femoral head. Mild loss of height of the L4 vertebral body, which is better seen on the MRI of the lumbar spine from earlier on the same day.

Miscellaneous: Small left hip joint effusion. No abnormal bursal fluid.
Impression: IMPRESSION:

A███████ Mehrnaz ███████ █ : ██    Admission Date: 04/30/2024, Discharge Date: 05/04/2024

Nondisplaced intertrochanteric left hip fracture.

Electronically signed by: Joshua Hanelin on 5/1/2024 12:32 PM
**MRI Lumbar Spine wo Contrast**
Narrative: EXAM:
MRI LUMBAR SPINE WITHOUT CONTRAST

EXAM DATE:5/1/2024 02:42 AM

CLINICAL HISTORY: Pain.

COMPARISON: None.

TECHNIQUE: Multiplanar, multisequence T1-weighted and fluid-sensitive sequences of the
lumbar spine from T12 to S2 without contrast. Other: None.

FINDINGS:
Spinal Canal: The conus terminates at L1. The conus medullaris and cauda equina are
unremarkable.

Alignment: Grade 1 anterolisthesis of L2 on L3.

Bone Marrow: Five non-rib-bearing lumbar vertebral bodies are assumed. Mild central
wedging of the superior endplate of L4 with associated Schmorl's node. No bone marrow
replacement.

Disk Levels/Facets:
T12-L1: Disk bulge, facet degenerative changes, and ligamentous thickening result in no
significant spinal canal stenosis. No significant neural foraminal narrowing.

L1-L2: Disk bulge, facet degenerative changes, and ligamentous thickening result in no
significant spinal canal stenosis. No significant neural foraminal narrowing.

L2-L3: Disk bulge, facet degenerative changes, and ligamentous thickening result in no
significant spinal canal stenosis. Mild to moderate bilateral neural foraminal narrowing.

L3-L4: Disk bulge, facet degenerative changes, and ligamentous thickening result in no
significant spinal canal stenosis. Mild to moderate bilateral neural foraminal narrowing.

L4-L5: Moderate facet degenerative changes and ligamentous thickening result in grade 1
anterolisthesis of L4 on L5. Superimposed circumferential disk bulge is present. These
combine to result in moderate spinal canal stenosis and moderate to advanced
bilateral lateral recess stenosis. Foraminal narrowing is moderate bilaterally.

L5-S1: Disk bulge, facet degenerative changes, and ligamentous thickening result in no
significant spinal canal stenosis. Mild to moderate bilateral neural foraminal narrowing.

Musculature: Normal. No edema or fatty atrophy.

Other: The partially visualized retroperitoneum is unremarkable.

11/19/24, 5:49 PM

A█████ Mehrnaz █████████ ████████ ██████  Admission Date: 04/30/2024, Discharge Date: 05/04/2024

Impression: IMPRESSION:

Multilevel degenerative changes of the lumbar spine, most notably at L4-L5 where there is moderate spinal canal stenosis and moderate to advanced bilateral lateral recess stenosis in the region of the descending L5 nerve roots. Moderate bilateral
foraminal narrowing is also present. Additional findings are as detailed above.

RADIA

Dictated By: Eshetu, Tadesse MD 2024-05-01 04:09:08.8
Signed By: Eshetu, Tadesse MD 2024-05-01 04:28:40.0
Transcribed By: Sydoriak, Michelle 2024-05-01 04:20:55.783

SITE ID: 168
Patients are advised to discuss imaging findings and recommendations with the ordering provider.
**MRI Thoracic Spine wo Contrast**
Narrative: EXAM:
MRI THORACIC SPINE WITHOUT CONTRAST

EXAM DATE: 5/1/2024 02:42 AM

CLINICAL HISTORY: Pain.

COMPARISONS: MRI LUMBAR SPINE WO CONTRAST 05/01/2024 1:38 AM.

TECHNIQUE: Multiplanar, multisequence T1-weighted and fluid-sensitive sequences of the thoracic spine from C7 to L1 without contrast. Other: None.

FINDINGS:
Spinal Canal: No signal abnormality in the visualized spinal cord.

Alignment: No scoliosis or spondylolisthesis.

Bone Marrow: No gross fractures or bone lesion. No bone marrow replacement. Disk desiccation is present throughout.

Tiny disk protrusions are present within the mid thoracic level without spinal canal or foraminal narrowing.

Musculature: Normal. No edema or fatty atrophy.

Other: Minimal bilateral pleural effusions. The visible mediastinum, and abdominal cavity are unremarkable.
Impression: IMPRESSION:
Mild multilevel degenerative changes of the thoracic spine without spinal canal or neural foraminal narrowing. No cord compression or edema.

Minimal bilateral pleural effusions.

RADIA

A▬▬ Mehrnaz ▬▬▬▬▬▬   Admission Date: 04/30/2024, Discharge Date: 05/04/2024

Dictated By: Eshetu, Tadesse MD 2024-05-01 04:04:18.437
Signed By: Eshetu, Tadesse MD 2024-05-01 04:10:17.0
Transcribed By: Sydoriak, Michelle 2024-05-01 04:06:20.073

SITE ID: 168
Patients are advised to discuss imaging findings and recommendations with the ordering
provider.
**CT Lower Extremity Left wo contrast**
Narrative: PRELIMINARY MUSCULOSKELETAL RADIOLOGY INTERPRETATION

EXAM: CT LOWER EXTREMITY LEFT WO CONTRAST

EXAM DATE: 5/1/2024 01:54 AM

CLINICAL HISTORY: Pain. ▬▬▬▬▬ female with previous history of left femur fracture
status post surgery and resultant chronic left hip and femur pain. Fell at the airport landing on
her left side initially, first hip then shoulder. Severe left hip pain since the fall. Pain is mainly in the left hip and femoral region with intermittent back pain.
Negative plain films reportedly (note that only images of the ankle are available for review at
the time of interpretation). There is reportedly a CT
(uncertain location and source, not available for review) revealing a nondisplaced fracture of
the left greater trochanter with an old fracture deformity of the more distal femur.

COMPARISON: None.

TECHNIQUE: Routine helical CT imaging was performed of the left lower extremity from the
hip through the mid lower leg. Portions of the knee are excluded. Only bone windows are
provided for review. IV contrast: None. Reconstructions: Coronal and
sagittal.

In accordance with CT protocol optimization, one or more of the following dose reduction
techniques were utilized for this exam: automated exposure control, adjustment of mA and/or
KV based on patient size, or use of iterative reconstructive technique.
Impression: PRELIMINARY IMPRESSION:

1. Likely nondisplaced fracture of the greater tuberosity, seen on series 203 images 34 through
44 and series 202 images 69 through 85. No displacement.
2. No evidence of femoral neck fracture. Old healed fracture of the midshaft of the femur.
3. No other evidence of acute bony abnormality.
4. Limited evaluation of the soft tissues is unremarkable other than a small posttraumatic
hematoma adjacent to the greater trochanter fracture.

RADIA

Radiation Dose Information Provided By Hospital/Clinic
CT LOWER EXTREMITY LEFT WO CONTRAST CTDI: 12.00 mGy CTDLP: 755.00 mGy-cm
DLP

This exam has been reviewed and interpreted by a Board Certified/Eligible Radiologist.
A Subspecialty Overread Report and / or Addendum will follow within 24 hours.

11/19/24, 5:49 PM

A███████ Mehrnaz ████████████ ████ Admission Date: 04/30/2024, Discharge Date: 05/04/2024

Dictated By: Hurley, Patrick MD 2024-05-01 02:47:41.577
Signed By: Hurley, Patrick MD 2024-05-01 02:53:47.0
Transcribed By: Davalos, Carol 2024-05-01 02:49:30.02

SITE ID: 181
Patients are advised to discuss imaging findings and recommendations with the ordering
provider.
**XR Chest AP Portable**
Narrative: EXAM: XR CHEST AP PORTABLE

EXAM DATE: 5/1/2024 01:18 AM

CLINICAL HISTORY: Fever.

COMPARISON: XR RIBS LEFT W PA CHEST 04/30/2024 8:02 PM.

TECHNIQUE: 1 view.

FINDINGS:
Lungs/Pleura: Minimal linear densities in the left base may reflect a small amount of
pneumonia. Exam limited by portable technique. Lungs are otherwise clear.

Mediastinum: Normal heart size and mediastinal contour.

Other: Bones and soft tissues are unremarkable.
Impression: IMPRESSION:
Possible left lower lobe pneumonia.

RADIA

Dictated By: Hurley, Patrick MD 2024-05-01 02:01:07.53
Signed By: Hurley, Patrick MD 2024-05-01 02:02:10.0
Transcribed By: Hurley, Patrick 2024-05-01 02:02:10.75

SITE ID: 181
Patients are advised to discuss imaging findings and recommendations with the ordering
provider.


CT: Reference imaging results for full report.

**CT Lower Extremity Left wo contrast 5/1/2024  2:53 AM**

Impression
PRELIMINARY IMPRESSION:

1. Likely nondisplaced fracture of the greater tuberosity, seen on series 203 images 34 through 44
and series 202 images 69 through 85. No displacement.
2. No evidence of femoral neck fracture. Old healed fracture of the midshaft of the femur.
3. No other evidence of acute bony abnormality.
4. Limited evaluation of the soft tissues is unremarkable other than a small posttraumatic hematoma
adjacent to the greater trochanter fracture.

A███████ Mehrnaz ████████████ ████ Printed by [140136370] at 11/19/2024 5:50 PM

https://carelinkor.providence.org/EpicCareLink/common/epic_main.asp

7/11

11/19/24, 5:49 PM

A███████, Mehrnaz ████████  ████████                    Admission Date: 04/30/2024, Discharge Date: 05/04/2024

RADIA

Radiation Dose Information Provided By Hospital/Clinic
CT LOWER EXTREMITY LEFT WO CONTRAST CTDI: 12.00 mGy CTDLP: 755.00 mGy-cm DLP

This exam has been reviewed and interpreted by a Board Certified/Eligible Radiologist.
A Subspecialty Overread Report and / or Addendum will follow within 24 hours.

Dictated By: Hurley, Patrick MD 2024-05-01 02:47:41.577
Signed By: Hurley, Patrick MD 2024-05-01 02:53:47.0
Transcribed By: Davalos, Carol 2024-05-01 02:49:30.02

SITE ID: 181
Patients are advised to discuss imaging findings and recommendations with the ordering provider.

MRI: Reference imaging results for full report.

**MRI Hip Left wo Contrast 5/1/2024 12:32 PM**

Impression
IMPRESSION:

Nondisplaced intertrochanteric left hip fracture.

Electronically signed by: Joshua Hanelin on 5/1/2024 12:32 PM

Labs:
Recent Results (from the past 24 hour(s))
CBC with Differential

| Result | Value | Ref Range |
|---|---|---|
| White Blood Cells | 9.72 | 4.0 - 11.0 K/uL |
| Red Blood Cells | 4.64 | 4.00 - 6.00 M/uL |
| Hemoglobin | 13.3 | 12.0 - 15.0 g/dL |
| Hematocrit | 41.6 | 36.0 - 48.0 % |
| MCV | 89.7 | 80.0 - 99.0 fL |
| MCH | 28.7 | 27.0 - 31.0 pg |
| MCHC | 32.0 | 32.0 - 36.0 g/dL |
| RDW-CV | 12.5 | 11.0 - 15.0 % |
| Platelet Count | 229 | 140 - 400 K/uL |
| MPV | 9.1 (L) | 9.4 - 12.3 fL |
| % Neutrophils | 77.5 | % |
| % Lymphocytes | 15.6 | % |
| % Monocytes | 6.0 | % |
| % Eosinophils | 0.1 | % |
| % Basophils | 0.3 | % |
| % Immature Granulocytes | 0.5 | 0.0 - 1.0 % |
| Absolute Neutrophils | 7.53 (H) | 1.80 - 6.80 K/uL |
| Absolute Lymphocytes | 1.52 | 1.00 - 3.40 K/uL |
| Absolute Monocytes | 0.58 | 0.20 - 0.80 K/uL |
| Absolute Eosinophils | 0.01 | 0.00 - 0.40 K/uL |
| Absolute Basophils | 0.03 | 0.00 - 0.10 K/uL |
| Absolute Immature Granulocytes | 0.05 | 0.00 - 0.10 K/uL |
| % nRBC | 0.0 | 0.0 per 100 WBCs |
| Absolute nRBC | 0.00 | 0.00 K/uL |

Comprehensive Metabolic Panel

11/19/24, 5:49 PM

A███████ Mehrnaz ████████████████   Admission Date: 04/30/2024, Discharge Date: 05/04/2024

| Result | Value | Ref Range |
|---|---|---|
| Na | 142 | 136 - 145 mmol/L |
| K | 3.8 | 3.5 - 5.1 mmol/L |
| Cl | 107 | 98 - 107 mmol/L |
| CO2 | 28 | 21 - 32 mmol/L |
| Anion Gap | 7 | 5 - 16 mmol/L |
| Glucose | 106 | 74 - 106 mg/dL |
| BUN | 12 | 6 - 23 mg/dL |
| Creatinine | 0.78 | 0.60 - 1.10 mg/dL |
| Calcium | 9.1 | 8.5 - 10.5 mg/dL |
| Albumin | 3.9 | 3.4 - 5.0 g/dL |
| Bilirubin Total | 0.5 | 0.2 - 1.2 mg/dL |
| Total Protein | 7.1 | 6.4 - 8.3 g/dL |
| AST | 20 | 5 - 39 U/L |
| ALT | 27 | 6 - 55 U/L |
| Alkaline Phosphatase | 74 | 40 - 150 U/L |
| Globulin | 3.2 | g/dL |
| Albumin/Globulin Ratio | 1.2 | |
| BUN/Creatinine Ratio | 15.4 | 5.0 - 30.0 |
| eGFR | >60 | >60 mL/min/1.73m2 |

**Procalcitonin**

| Result | Value | Ref Range |
|---|---|---|
| Procalcitonin | <0.10 | <0.10 ng/mL |

**POC Glucose**

| Result | Value | Ref Range |
|---|---|---|
| Glucose, POC | 111 (H) | 70 - 110 mg/dL |

**Basic Metabolic Panel**

| Result | Value | Ref Range |
|---|---|---|
| Na | 140 | 136 - 145 mmol/L |
| K | 3.8 | 3.5 - 5.1 mmol/L |
| Cl | 108 (H) | 98 - 107 mmol/L |
| CO2 | 29 | 21 - 32 mmol/L |
| Anion Gap | 3 (L) | 5 - 16 mmol/L |
| Glucose | 120 (H) | 74 - 106 mg/dL |
| BUN | 11 | 6 - 23 mg/dL |
| Creatinine | 0.73 | 0.60 - 1.10 mg/dL |
| Calcium | 8.6 | 8.5 - 10.5 mg/dL |
| BUN/Creatinine Ratio | 15.1 | 5.0 - 30.0 |
| eGFR | >60 | >60 mL/min/1.73m2 |

**CBC with Differential**

| Result | Value | Ref Range |
|---|---|---|
| White Blood Cells | 7.75 | 4.0 - 11.0 K/uL |
| Red Blood Cells | 4.38 | 4.00 - 6.00 M/uL |
| Hemoglobin | 12.6 | 12.0 - 15.0 g/dL |
| Hematocrit | 39.3 | 36.0 - 48.0 % |
| MCV | 89.7 | 80.0 - 99.0 fL |
| MCH | 28.8 | 27.0 - 31.0 pg |
| MCHC | 32.1 | 32.0 - 36.0 g/dL |
| RDW-CV | 12.4 | 11.0 - 15.0 % |
| Platelet Count | 206 | 140 - 400 K/uL |
| MPV | 9.2 (L) | 9.4 - 12.3 fL |
| Absolute Neutrophils, Automated | 5.79 | 1.80 - 6.80 K/uL |
| % Neutrophils | 74.7 | % |
| % Lymphocytes | 17.5 | % |
| % Monocytes | 7.0 | % |
| % Eosinophils | 0.1 | % |
| % Basophils | 0.4 | % |
| % Immature Granulocytes | 0.3 | 0.0 - 1.0 % |

A[REDACTED] Mehrnaz [REDACTED] Admission Date: 04/30/2024, Discharge Date: 05/04/2024

| | | |
|---|---|---|
| Absolute Neutrophils | 5.79 | 1.80 - 6.80 K/uL |
| Absolute Lymphocytes | 1.36 | 1.00 - 3.40 K/uL |
| Absolute Monocytes | 0.54 | 0.20 - 0.80 K/uL |
| Absolute Eosinophils | 0.01 | 0.00 - 0.40 K/uL |
| Absolute Basophils | 0.03 | 0.00 - 0.10 K/uL |
| Absolute Immature Granulocytes | 0.02 | 0.00 - 0.10 K/uL |
| % nRBC | 0.0 | 0.0 per 100 WBCs |
| Absolute nRBC | 0.00 | 0.00 K/uL |

**Magnesium**

| Result | Value | Ref Range |
|---|---|---|
| Magnesium | 2.5 | 1.6 - 2.6 mg/dL |

**Protime INR**

| Result | Value | Ref Range |
|---|---|---|
| Prothrombin Time | 13.5 | 12.3 - 14.9 seconds |
| INR | 1.0 | 0.9 - 1.2 |

**POC Glucose**

| Result | Value | Ref Range |
|---|---|---|
| Glucose, POC | 108 | 70 - 110 mg/dL |

**POC Glucose**

| Result | Value | Ref Range |
|---|---|---|
| Glucose, POC | 100 | 70 - 110 mg/dL |

**ECG 12 lead**

| Result | Value | Ref Range |
|---|---|---|
| INTERPRETATION TEXT | Not Confirmed | |

**POC Glucose**

| Result | Value | Ref Range |
|---|---|---|
| Glucose, POC | 122 (H) | 70 - 110 mg/dL |

**Urinalysis with Microscopic with Culture if Indicated**
Specimen: Urine, Clean Catch

| Result | Value | Ref Range |
|---|---|---|
| Color, Urine | Yellow | Colorless/Yellow |
| Clarity, Urine | Clear | Clear |
| pH, Urine | 6.5 | 5.0 - 8.0 |
| Specific Gravity, Urine | 1.013 | 1.000 - 1.030 |
| Protein, Urine | Negative | Negative, 0-20 mg/dL |
| Blood, Urine | Negative | Negative |
| Glucose, Urine | Negative | Negative, 0-50 mg/dL |
| Ketones, Urine | Negative | Negative, Trace |
| Bilirubin, Urine | Negative | Negative |
| Nitrite, Urine | Negative | Negative |
| Leukocyte Esterase, Urine | Negative | Negative, Trace |
| Urobilinogen, Urine | Normal | Normal |
| White Blood Cells, Urine | 0-5 | None Seen, 0-5 /HPF |
| Red Blood Cells, Urine | 0-2 | None Seen, 0-2 /HPF |
| Squamous Epithelial Cells, Urine | None Seen | None Seen, Rare /LPF |
| Bacteria, Urine | None Seen | None Seen /HPF |
| Mucus, Urine | Rare (A) | None Seen /LPF |

Assessment:
Mehrnaz A[REDACTED] is a [REDACTED] female with a PMHx of hyperlipidemia, borderline diabetes, chronic pain on multiple pain medications, prior history of left femur fracture 20 years ago s/p pin type fixation c/b infection and resultant chronic left hip and femur pain who sustained a GLF resulting in a left hip fracture. On presentation MRI confirmed she has a left intertrochanteric femur fracture. Risk benefits and alternatives of left femur intramedullary nail fixation were explained to the patient, primary risks being neurovascular compromise including bleeding and death, infection, nonunion, malunion. Primary benefits are decreased mortality

11/19/24, 5:49 PM

A██████ Mehrnaz ████████████████████    Date: 04/30/2024, Discharge Date: 05/04/2024

due to improved weightbearing, improved anatomic alignment, decreased risk for malunion and nonunion. Patient voiced understanding of risks, benefits, and wished to proceed with surgery.

Plan
- NWB LLE
- d/w hospitalist
- preop optimization per hospitalist
- NPO MN
- consented, marked
- OR tomorrow morning

Electronically signed by:
John Attenello, M.D.
Orthopaedic Spine Surgeon
310-337-2589
5/1/2024
8:23 PM PDT


Electronically Signed by John D Attenello, MD on 05/01/24 2032


ED to Hosp-Admission (Discharged) on 4/30/2024      *Note shared with patient*


## Care Timeline

04/30 Ò Admitted from ED (Observation) 2332
05/01 Ò Admitted 0841
05/02 Ò LEFT FEMUR INTRAMEDULLARY NAIL FIXATION
05/04 Ò Discharged 1803

A██████ Mehrnaz ████████████████    Printed by [140136370] at 11/19/2024 5:50 PM

11/14/24, 7:27 PM                AARP Supplemental and Personal Health Plans - Provider Online Tool - Claims Search - Details

  

**AARP** Supplemental and Personal Health.
~ **UnitedHealthcare**

### Healthcare Providers

| | | | |
|---|---|---|---|
| Insured Member Name | _____, MEHRNAZ | Billing Provider Name | DR JOHN ATTENELLO MD APC |
| AARP Member #: | 351703884-1 | Billing Provider Address: | 1201 E BIXBY RD LONG BEACH, CA 90807 |
| Patient #: | 140 | Total Billed Amount: | $10,287.76 |
| Claim #: | 46663-407592-1 | Total Benefit: | $290.35 |
| Claim Status: | PROCESSED | Adjustment Amount: | $0.00 |
| Payment Date: | 06/27/2024 | Amount Paid to Provider: | $290.35 |
| Date(s) at Service: | 05/01/2024 to 05/02/2024 | | |

| Dates of Service | Performing Provider Name | Plan Code | Amount Charged | Medicare Approved | Medicare Paid | Applied to Deductible | Benefit Amount | Service Message(s) Click to Show ☐ |
|---|---|---|---|---|---|---|---|---|
| 05/01/2024 05/01/2024 | ATTENELLO | **G »** | $971.81 | $137.20 | $109.76 | $0.00 | $27.44 | Show Message(s) |
| 05/02/2024 05/02/2024 | ATTENELLO | **G »** | $9,315.95 | $1,314.53 | $1,051.62 | $0.00 | $262.91 | Show Message(s) |

**Claim Message(s):**
The Medicare Paid Amount may be different than the Medicare Paid Amount shown o
n your Medicare Statement. This was done simply to process your claim.

PW16C 7/05

The information within this site is confidential and exempt from disclosure under applicable federal and state law. It is intended solely for the authorized physician, hospital, or other health care professional's office use to determine member eligibility and claim status. It is the responsibility of all users to abide by the User Agreement and all applicable HIPAA requirements. Any dissemination or distribution of any information within this site is strictly prohibited.

Coverage insured by UnitedHealthcare Insurance Company
(for New York residents  UnitedHealthcare Insurance Company of New York)

 

11/19/24, 5 50 PM

A█████ Mehrnaz ███████████████ Admission Date: 04/30/2024, Discharge Date: 05/04/2024

A█████████, ████████████

John D Attenello, MD          Op Note  ⚠ ✉        Date of Service: 05/02/24 1454
Physician                    Signed              Creation Time: 05/02/24 1454
Orthopedics

DATE OF SERVICE:  5/2/2024

PREOPERATIVE DIAGNOSIS:
1. Left intertrochanteric femur fracture

POSTOPERATIVE DIAGNOSIS:
1. Left intertrochanteric femur fracture

PROCEDURE INFORMATION:
1. Left femur intramedullary nail fixation
2. Supervision of fluoroscopy

SURGEON/STAFF:  John Attenello, MD

ASSISTANT:  None

ANESTHESIA:  General.

ESTIMATED BLOOD LOSS:  25 cc.

IMPLANTS: DePuy Synthes long nail, 2 x distal interlocks

COMPLICATIONS:  None

DISPOSITION:  Stable to PACU

INDICATIONS:  This is a pleasant ████████ female with a prior history of left femoral shaft
infection and repair with resultant deformity over 20 years ago who sustained a GLF and
sustained a hip fracture. On presentation MRI imaging confirmed she has a left
intertrochanteric femur fracture. Risk benefits and alternatives of left femur intramedullary nail
fixation were explained to the patient, primary risks being neurovascular compromise including
bleeding and death, infection, nonunion, malunion.  Primary benefits are decreased mortality
due to improved weightbearing, improved anatomic alignment, decreased risk for malunion
and nonunion.  Patient voiced understanding of risks, benefits, and wished to proceed with
surgery

OPERATIVE PROCEDURE: Patient was brought to the operative suite where he was
intubated on the bed. Coban was placed over the operative foot and ankle and the boot was
placed. They were then transferred from the bed to the table. perineal post was placed and
boot traction was applied to the operative lower extremity while the contralateral lower
extremity was positioned on the leg holder with hip flexion, abduction to allow space for
fluoroscopic imaging. The operative lower extremity was then pulled slightly with gross traction
with slight flexion of the hip as well as adduction to achieve a very nice anatomic alignment on

11/19/24, 5:50 PM

A███████ Mehrnaz                                  Admission Date: 04/30/2024, Discharge Date: 05/04/2024

AP and lateral. The operative lower extremity was then sterilely prepped and draped in usual standard fashion.

A time-out ensued where correct patient identity and extremity were noted. We then made a stab incision, proximally above the greater trochanter along the axis of the femur at about the level of the ASIS. A guidepin was introduced and we got our start site just medial to the tip of the greater trochanter. We then advanced the opening reamer over this guide pin to the level of where the lesser trochanter would have been. We then placed the guidewire down the shaft of the femur, measured the appropriate length of 380mm and then began sequentially reaming, with consideration of the deformity. Reaming was started at 8.5 and advanced to 13mm for an 11 mm nail which was required for the deformity. An 11mm diameter nail was then advanced into the shaft of the femur. We attached the proximal screw jig and then placed a pin into the femoral neck to determine the correct angle on lateral and AP imaging for the helical blade. Once this was confirmed we measured the appropriate length best suited to accommodate for compression. We placed the helical blade, engaged the set screw proximally until tight. We then removed the jig and fluoroscopy confirmed good placement of fixation into the femoral neck and head. We then placed 2 distal interlock screw using the perfect circle technique. This completed our fixation. Final fluoroscopic imaging showed excellent anatomic alignment of this proximal femur fracture. All wounds were copiously irrigated with sterile saline. The fascia was closed in layered fashion with #1 vicryl, 0 Vicryl, 2-0 vicryl, and staples and sterile dressing. Leg length and rotation was checked and compared to contralateral leg and noted to be similar. The patient was then transferred from the table to the bed and then extubated on the bed and they were brought safely to PACU.

Electronically Signed by John D Attenello, MD on 05/02/24 1501

ED to Hosp-Admission (Discharged) on 4/30/2024     *Note shared with patient*

## Care Timeline

04/30  ◯  Admitted from ED (Observation) 2332
05/01  ◯  Admitted 0841
05/02  ◯  LEFT FEMUR INTRAMEDULLARY NAIL FIXATION
05/04  ◯  Discharged 1803

A███ Mehrnaz ███████████   Printed by [140136370] at 11/19/2024 5:51 PM

| Dr John Attenello MD APC vs United Healthcare (AARP) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Case # | | | | | | | | | |
| Member ID# | 351703884-1 | | | | | | | | |
| | | | | Todays Date | 1/12/2025 | | | | |
| | | | | Interest | 0.15 | | | | |
| Name | DOS | CPT | Billed | Allowed | Underpaid | EOB Date | Total Years | Interest | Total |
| | | | | | | | | | |
| Mehrnaz A. | 5/1/2024 | 99222 | $971.81 | $137.20 | $834.61 | 6/27/2024 | 0.545205479 | $68.26 | |
| | 5/2/2024 | 27245 | $9,315.95 | $1,314.53 | $8,001.42 | 6/27/2024 | 0.545205479 | $654.36 | |
| | | | | | | | | | |
| Total | | | $10,287.76 | $1,451.73 | $8,836.03 | | | $722.62 | $9,558.65 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | 2500 | | $722.62 | | $3,222.62 |

Filed 12/31/24

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| JONATHAN NISSANOFF, | ) 23APLC00143 |
| Plaintiff and Appellant, | ) Spring Street Trial Court |
| v. | ) No. 22STLC08599 |
| UNITEDHEALTHCARE INSURANCE COMPANY, | ) |
| Defendant and Respondent. | ) **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge. Affirmed.

Jonathan Nissanoff, in pro. per., for Plaintiff and Appellant.

CROWELL & MORING, Jennifer S. Romano and Andrew Holmer for Defendant and Respondent.

Plaintiff and appellant, Jonathan Nissanoff, challenges the trial court's ruling sustaining the demurrer filed by defendant and respondent, UnitedHealthcare Insurance Company ("UHC") without leave to amend.

\*        \*        \*

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### *First Amended Complaint*

On December 27, 2022, plaintiff, a surgeon and an assignee of his medical corporation, Advance Orthopedic Center ("AOC"), brought this action against defendant UHC for quantum meruit and breach of implied contract. On February 10, 2023, defendant demurred to the complaint. On February 14, 2023, plaintiff filed the first amended complaint, the operative complaint for the purposes of this appeal, alleging the following causes of action: (1) quantum meruit, (2) breach of implied contract, (3) breach of oral contract, (4) breach of implied covenant of good faith and fair dealing, (5) unjust enrichment, (6) declaratory relief, (7) recovery of payment for services rendered, and (8) interference with prospective economic advantage.

Plaintiff alleged the following facts. Plaintiff and AOC provide emergent medical care to members, subscribers and insureds of defendant, through their physicians. Defendant is licensed to and does business as a health care plan insurer and/or medical health plan administrator. Defendant is regulated by the Department of Managed Health Care ("DMHC") and/or the California Department of Insurance ("CDI").

Between November 2020 and November 2021, AOC's physicians provided legally required emergency medical or post-stabilization care services to patients who were enrolled in health policies insured, underwritten or administered by defendant. The physicians "billed usual, customary and reasonable charges for the care." The physicians determined their rates based on the DMHC regulations, which provide a methodology to define the amount health care service plans like UHC are to pay out-of-network providers, such as AOC.

Defendant paid for these services in amounts that were less than the physicians' usual, customary or reasonable rate and were less than the physicians' billed charges. The rates at which defendant reimbursed plaintiff were arbitrary, capricious and inexplicable, and were based on flawed databases manipulated by defendant to underpay out-of-network providers.

---

[1]Plaintiff elected to proceed via Proposed Statement on Appeal, which the trial court certified. However, "[i]n accordance with our standard of review, our factual summary assumes the truth of the operative complaint's properly pleaded factual allegations [citation] and matters that have been judicially noticed [citation]." (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 451, fn. 2.)

## *Demurrer to First Amended Complaint*

On April 17, 2023, defendant filed a demurrer to the entire first amended complaint on the grounds that each cause of action was based on erroneous application of the Knox-Keene Act, which "only applies to 'health care service plans[.]'" UHC is an insurer licensed and regulated by the CDI, not a health care service plan, which would be regulated by the DMHC.

Defendant contended that it cannot be regulated by the DMHC because it is regulated by the CDI, and cited *Smith v. PacifiCare Behavioral Health of California, Inc.* (2001) 93 Cal.App.4th 139, 159 for the proposition that the Court of Appeal has "'recognized that the legislature has elected to subject insurers and health care service plans to distinct regulatory regimes. Insurers are regulated by the Insurance Code and the Insurance Commissioner. Health care service plans fall under the jurisdiction of the Department of Managed Care and the Knox-Keene Act.'" (*Ibid.*, italics omitted.) Therefore, if UHC is regulated by the CDI, it cannot be regulated by the DMHC and the Knox-Keene Act.

Defendant demurred to the equitable causes of action on the grounds that there were no allegations the medical services rendered by plaintiff's physicians were at defendant's request or for its benefit.

On April 24, 2023, plaintiff filed an opposition. On May 10, 2023, defendant filed a reply.

## *Hearing on Demurrer and Trial Court's Order Sustaining the Demurrer*

A hearing on the demurrer was held on May 17, 2023. After oral argument, the court ruled. The court first addressed the requests for judicial notice made by both parties.

### Judicially Noticed Documents[2]

Defendant requested that the trial court take judicial notice of the following documents: (1) Certificate of Authority issued by the CDI to defendant, which bears Department of Insurance certificate number 08775 and is dated April 28, 2012; (2) a PDF printout from the

---

[2] We "may also take into account matters that may be judicially noticed. [Citation.]" (*Williams v. Housing Auth. of L.A.* (2004) 121 Cal.App.4th 708, 714, fn. 6, citing *Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379 ["'a complaint may be read as if it included matters judicially noticed. [Citations.] Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect'"].)

CDI showing the CDI's Company Profile of UHC[3]; (3) a PDF printout from the California DMHC public website showing the portion of DMHC's California Department of Managed Healthcare Plan Directory alphabetically listing all DMHC-licensed health care services plans with names beginning "Sequoia Health Plan, Inc." through "Western Health Advantage," available at https://wpso.dmhc.ca.gov/Dashboard/SearchHealthPlan.aspx; and (4) the portion of the DMHC's website shown in Exhibit C and publicly available at https://wpso.dmhc.ca.gov/Dashboard/SearchHealthPlan.aspx. The court granted the aforementioned requests pursuant to section 452, subdivision (d) of the Evidence Code.

The trial court denied plaintiff's request for judicial notice of multiple unpublished decisions and prior rulings against defendant in support of plaintiff's position that defendant is regulated by the DMHC. Defendant's supplemental request for judicial notice of rulings in unpublished cases was likewise denied. In support of its ruling, the trial court cited *In re Bush* (2008) 161 Cal.App.4th 133, 146, fn. 5 and California Rules of Court, rule 8.1115(b)(1) for the proposition that judicial notice of unpublished decisions is only permitted when "'relevant under the doctrine[s] of law of the case, res judicata or collateral estoppel.'"

    The Court's Ruling on the Demurrer to the First Amended Complaint

Acknowledging defendant's submission of UHC's "certificate of authority[] issued by the CDI" and "DMHC's directory of all licensed Knox-Keene health care service plans, which does not include the name Unitedhealthcare Insurance Company," both of which had been judicially noticed, the trial court noted that plaintiff did not address either document or explain how they did not prove UHC is regulated by the CDI and not by DMHC. The court also noted that plaintiff did not allege that UHC is designated as an HMO or only sells health insurance, either of which designation would subject it to regulation by the DMHC.

In response to plaintiff's assertion that whether UHC is a health care service provider is a question of fact that cannot be resolved on demurrer, the court observed that plaintiff was "required to plead the facts that support [its] contention that [d]efendant is a health care service provider regulated by the DMHC because that is the basis for all the causes of action. . . . On

---

[3]The website link is no longer available.

demurrer, the [c]ourt cannot accept as true the conclusory allegation that defendant is a healthcare services provider regulated by the DMHC."

In response to plaintiff's contention that defendant was collaterally estopped from arguing it is not a health care service provider because the issue had been resolved in an earlier small claims action against it, the court noted that a "small[] claims judgment against a defendant, however, does not have collateral estoppel effect in any subsequent superior court action brought by the plaintiff regarding the same issue." Citing *ERA-Trotter Girouard Association v. Superior Court* (1996) 50 Cal.App.4th 1851, 1856, the trial court ruled that UHC was not barred from arguing that it is not a health care service plan in this action. Accordingly, the trial court sustained the demurrer to the entire first amended complaint.

In addressing the equitable causes of action at issue in this appeal, the trial court ruled that as plaintiff based his expectation for reimbursement on the theory of obligation pursuant to the Knox-Keene Act for both quantum meruit and breach of implied-in-law contract, and because he failed to allege all elements required for relief under the quantum meruit theory, the demurrer should be sustained.[4]

Leave to Amend

Citing *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348, the trial court denied leave to amend because "[p]laintiff's opposition does not show how the [f]irst [a]mended [c]omplaint, which relies entirely on the Knox-Keene Act and DMHC's regulations, can be amended to state cause of action against [defendant]." Defendant's demurrer to the first amended complaint was sustained in its entirety without leave to amend. The first amended complaint was dismissed with prejudice and a judgment of dismissal was entered by the court.

---

[4]As plaintiff does not challenge the trial court's rulings as to the following equitable causes of action: breach of oral contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, declaratory relief, recovery of payment for services rendered, and interference with prospective economic advantage, we decline to give a detailed explanation of the trial court's reasoning as it relates to those issues.

# DISCUSSION

## *Standard of Review on Demurrer*

We review de novo an order sustaining a demurrer without leave to amend. (*Centinela Freeman Emergency Medical Associates v. Health Net of Cal., Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.) We accept the truth of material facts properly pleaded in the operative complaint, """but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.]'" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) On demurrer, "a complaint may be read as if it included matters judicially noticed. [Citations.] Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect. [Citation.]" (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590; see also Code Civ. Proc., § 430.30, subd. (a).)

## *Applicability of Knox-Keene Act*

Plaintiff argues that because UHC clearly meets all the statutory requirements to be a health service plan as defined by the Knox-Keene Act, the trial court's determination that it was not subject to the provisions of Knox-Keene was erroneous and should be reversed. In support of his position, plaintiff argues that judicial notice should be taken of "various cases" "throughout Los Angeles County" where "UHC has tried to hide behind the [CDI]."

### Requests for Judicial Notice

To the extent plaintiff attempts to resurrect his argument that unpublished superior court decisions and rulings in unrelated proceedings are judicially noticeable, we reject the claim. It is well-settled that "a written trial court ruling has no precedential value." (*Bolanos v. Super. Ct.* (2008) 169 Cal.App.4th 744, 761 [denying petitioner's request for judicial notice of a minute order issued by a trial court in an unrelated case and finding the request improper].) The statutory exception for situations where the unpublished decision is "'relevant under the doctrines of law of the case, res judicata or collateral estoppel'" is inapplicable in this instance. (See Cal. Rules of Court, rule 8.1115(b)(1); see also *ERA-Trotter Girouard Assoc. v. Super. Ct., supra*, 50 Cal.App.4th at p. 1856 [refusing to accord collateral estoppel effect to issues

6

decided against defendants is consistent with the policy of fostering "speedy and final" adjudication in small claims matters].)

### Applicable Regulatory Regime

"[T]he Legislature has elected to subject insurers and health care service plans to distinct regulatory regimes." (*Smith v. PacifiCare Behavioral Health of Cal., Inc., supra,* 93 Cal.App.4th at p. 159, italics omitted.) Managed health care service plans are subject to the Knox-Keene Act and regulated by the DMHC. Life and disability insurer and insurance companies are subject to the Insurance Code and regulated by the California Department of Insurance. (See *Blue Cross of Cal., Inc. v. Super. Ct.* (2009) 180 Cal.App.4th 1237, 1242.)

"The Knox–Keene Act[5] is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care. [Citation.] Among many other things, the Act compels for-profit health care service plans to reimburse emergency health care providers for emergency services [and stabilization services] to the plans' enrollees. [Citation.] . . . [¶] Under the Department of Managed Health Care's regulations, 'reimbursement of a claim' for non-contract providers means health care service plans must pay 'the reasonable and customary value for the health care services rendered . . . .' (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)." (*Bell v. Blue Cross of Cal.* (2005) 131 Cal.App.4th 211, 215-216.)

"Health care service plans under the Knox-Keene Act are generally subject to the jurisdiction of the Commissioner of Corporations ([Health & Saf. Code,] § 1341), not the Insurance Commissioner. Thus, Insurance Code section 740, subdivision (g), exempts health care service plans from Department of Insurance jurisdiction. . . . Regulations concerning health care service plans are found in title 10 of the California Code of Regulations, section

---

[5]"The Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act), as amended, is the set of laws or statutes passed by the California state legislature providing the DMHC with the authority to regulate health care service plans. The Knox-Keene Act can be found in California Health & Safety Code, section 1340 et seq. Additionally, regulations are used by the DMHC to implement, interpret, or make specific the laws enforced by the Department. These regulations are codified under title 28 of the California Code of Regulations." (See California Department of Managed Health Care website <https://www.dmhc.ca.gov/LawsRegulations.aspx#:~:text=The%20Knox-Keene%20Act%20can,the%20California%20Code%20of%20Regulation> [as of Dec. 27, 2024].)

1300.43 et seq." (*Williams v. Cal. Physicians' Service* (1999) 72 Cal.App.4th 722, 729, italics and footnote omitted (*Williams*).)

The Legislature has made it clear that the Knox-Keene Act "shall not apply to: [¶] [entities] organized and operating pursuant to a certificate issued by the Insurance Commissioner unless the entity is directly providing the health care service through those entity-owned or contracting health facilities and providers, in which case this chapter shall apply to the insurer's plan and to the insurer." (Health & Saf. Code, § 1343, subd. (e)(1).)

Analysis

According to the operative complaint, after providing emergent medical care to patients enrolled in health policies insured, underwritten or administered by defendant, plaintiff's physicians billed defendant at rates determined based on the DMHC regulations, "which provide a methodology to define the amount healthcare service plans like UHC are to pay out-of-network providers."

The basis of defendant's demurrer is its contention that it is an insurer or insurance company licensed and regulated by the CDI, not a health care service plan, which would be regulated by the DMHC. In support of its position, defendant submitted UHC's "certificate of authority issued by the CDI" and "DMHC's directory of all licensed Knox-Keene health care service plans, which does not include the name UnitedHealthcare Insurance Company," both of which were judicially noticed.

The law is clear. Managed health care service plans are subject to the Knox-Keene Act and regulated by the DMHC. Life and disability insurer and insurance companies are subject to the Insurance Code and regulated by the CDI. (See *Blue Cross of Cal., Inc. v. Super. Ct.*, *supra*, 180 Cal.App.4th at p. 1242.) Thus, the only scenario in which defendant would be subject to the jurisdiction of the Knox-Keene Act would be if it were *directly* providing the health care service through entity-owned or contracting health facilities and providers. (See Health & Saf. Code, § 1343, subd. (e)(1).) Plaintiff has made no such allegation.

Plaintiff's argument that this court should deem defendant subject to the jurisdiction of DMHC because it clearly meets all the statutory requirements to be a health service plan as defined by the Knox-Keene Act fails, as courts have previously rejected analogous rationales.

8

In *Williams, supra,* 72 Cal.App.4th at pages 728-729, the plaintiff sued her health care service plan when it refused to pay for unlimited physical therapy, claiming that her right to physical therapy services vested under the Insurance Code "which restricts insurers' ability to reduce benefits in disability insurance policies." (*Ibid.,* italics omitted.) The plaintiff asserted that even if the Insurance Code did not apply to her health care service plan, "since the Commissioner of Corporations is to consult with the Insurance Commissioner before adopting regulations 'to ensure the consistency of regulations applicable to these plans' (see [Health & Saf. Code] § 1342.5), there is a basis for a parallel rule." (*Id.* at p. 731, fn. omitted.) The appellate court rejected the argument. In holding that the health care service plan at issue was "not an insurance policy subject to approval by the Insurance Commissioner, but a 'health care service plan' subject to approval by the Commissioner of Corporations[,]" the court noted that the plan was exempt from the Insurance Code and fell within the jurisdiction of the Commissioner of Corporations. (*Id.* at pp. 728-729, 731.) The court also found that the provision of the Health and Safety Code requiring the Commissioner of Corporations to consult with the Insurance Commissioner before adopting regulations for health care service plans did not form a basis for the judicial creation of a rule applicable to such plans that is parallel to provisions of the Insurance Code restricting the ability of disability insurers to reduce benefits. (*Ibid.*)

While here plaintiff does not tether his request that this court deem defendant subject to the Knox-Keene Act to the existence of a provision directing the commissioners governing the respective bodies to consult as the plaintiff did in *Williams,* the rationale behind his request is essentially the same. Plaintiff petitions this court to create a rule that would either extend application of the Knox-Keene Act to insurers regulated by the CDI or to create a parallel rule that would subject insurers regulated by the CDI to regulations the Legislature specifically drafted to apply to health care service plans. As this court does not legislate, we decline to take either action. Plaintiff's "remedy properly lies '. . . in the halls of the Legislature.' [Citation.]" (*Williams, supra,* 72 Cal.App.4th at p. 731.)

Defendant is an insurance company and is therefore regulated by the CDI. The judicially noticed certificate of authority issued to UHC by CDI supports this conclusion, and

plaintiff has offered no evidence to the contrary. Even if there were some affiliation between defendant and UHC, as plaintiff speculates, that does not transform defendant from an insurer or insurance company into a health care service plan subject to the Knox-Keene Act. (See *Blue Cross of Cal., Inc. v. Super. Ct., supra,* 180 Cal.App.4th at p. 1242; Cf. *Williams, supra,* 72 Cal.App.4th at pp. 728-732 [holding that the Insurance Code did not apply when plaintiff sought to challenge the conduct of her health care service plan by invoking a provision of the Insurance Code].)

Based on our determination that defendant is not subject to the Knox-Keene Act, we conclude that plaintiff's first amended complaint failed to state facts sufficient to constitute a cause of action. (*Williams v. Housing Auth. of L.A.* (2004) 121 Cal.App.4th 708, 719.) Thus, the demurrer was properly sustained as to the applicability of the Knox-Keene Act.

### *Quantum Meruit*

"[I]n order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant. One court summarized the rule as follows: 'The theory of quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value.' [Citations.]" (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248 (*Day*), emphasis in original.) "[W]hen the services are rendered by the plaintiff to a third person, the courts have required that there be a specific request therefor from the defendant[.]" (*Id.* at p. 249.)

Here, plaintiff attempts to circumvent the quantum meruit requirements by arguing that "where emergency medical services or other necessaries are provided to a third party, there is no requirement that a request be made by the defendant, and a plaintiff may recover even though the physician acted without the defendant's knowledge or consent." Again citing the Knox-Keene Act and section 1371.4 of the Health and Safety Code, regulations that are not applicable to entities under the jurisdiction of the CDI, plaintiff asserts that "health plans are required to reimburse out of network providers for the usual, customary and reasonable value of

the emergency services" and that health insurers are required to cover out-of-network emergency services without the need for a prior request for authorization . . . with the same cost sharing arrangements applicable to in-network services." Plaintiff does not allege that defendant directly requested the treatment or emergency services in question that were provided by plaintiff's physicians, nor does plaintiff assert that defendant was a direct beneficiary of the treatment or services.

Plaintiff cannot recover under a quantum meruit theory based on services rendered by the plaintiff to a third party, because there was no "specific request therefor from the defendant[.]" (See *Day, supra*, 98 Cal.App.4th at p. 249.) Moreover, plaintiff cannot demonstrate that the services rendered "were intended to and did benefit the defendant." (*Day, supra*, at p. 248, italics omitted; see also *Cal. Medical Assn. v. Aetna U.S. Healthcare of Cal., Inc.* (2001) 94 Cal.App.4th 151, 174) ["""A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution.""""].)

Plaintiff's attempts to circumvent the required standard for successful quantum meruit claims by contending that defendant must pay the usual, reasonable, and customary rate for the alleged emergency or post-stabilization services pursuant to the Knox-Keene Act also fail because as discussed *ante*, defendant is not a health care service plan governed by the Knox-Keene Act, but is instead an insurance provider or insurer properly registered with the CDI and governed by the California Insurance Code. (See Health & Saf. Code, § 1343 subd. (e)(1).)

The trial court properly sustained the demurrer as to plaintiff's quantum meruit claim.

*Implied-in-Law Contract*

Based on his continued reliance on the position that defendant is subject to DMHC regulations, plaintiff asserts that all the necessary bases for the implied-in-law contract are set forth in the Knox-Keene Act. (See Health & Saf. Code, §§ 1317, subd. (a), 1317.4.) Plaintiff also attempts to circumvent the elements of mutual assent and rate agreement required for the viability of a cause of action based on an implied-in-law contract by asserting that "Knox-Keene sets forth the 'meeting of the minds': [r]espondent was *required* under Knox-Keene to pay [usual, reasonable, and customary] rates. While [p]laintiff's and [d]efendant's definition of

11

[usual, reasonable, and customary rates] may be at odds with each other, that is a triable issue
of fact for determination at trial, and was not an issue that was subject to determination on
demurrer."

The elements of a claim for breach of contract are "the existence of the contract,
performance by the plaintiff or excuse for nonperformance, breach by the defendant and
damages. [Citation.]" (*First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731,
745.) "An implied contract is one, the existence and terms of which are manifested by
conduct." (Civ. Code, § 1621.) "Agreement may be '"shown by the acts and conduct of the
parties, interpreted in the light of the subject matter and of the surrounding circumstances."'"
(*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 681.) "[Q]uantum meruit is a theory
which implies a promise to pay for services as a *matter of law for reasons of justice* [citation],
while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed
in words. . . ." (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 456, fn. 14 [emphasis in
original].)

Here, plaintiff maintains that a contract is implied by: (1) the Knox-Keene Act; and (2)
the parties' conduct, namely that defendant authorized the treatment when plaintiff's physicians
called to confirm coverage and defendant made payments towards treatment. The first
argument fails because, as discussed, the Knox-Keene Act does not apply to defendant.
Plaintiff does not allege facts that demonstrate the parties, even if through their conduct and not
their words, reached an actual agreement that defendant would pay the usual, customary and
reasonable rate. (See *Maglica v. Maglica, supra,* 66 Cal.App.4th at p. 456, fn. 14.) Thus,
plaintiff fails to establish that an implied-in-law contract existed between the parties. As such,
the trial court properly sustained the demurrer as to plaintiff's claim for breach of implied-in-
law contract.

### *Misjoinder of Parties*

Citing no authority, plaintiff contends defendant's demurrer on grounds of misjoinder of
parties should be overruled. Specifically, plaintiff asserts that "[d]efendants [*sic*] are the proper
defendants [*sic*] in all of these matters," that defendant's "[d]eclarations that it is not the insurer
in these matters is simply not sufficient evidence that they are not the proper [d]efendants

12

[*sic*][,]" "the allegations set forth in the [c]omplaint control," that as "the 'local host' of the
Blue Cross Plan [*sic*]" "[d]efendants [*sic*] [are] part of the claims processing process[,]" thereby
subjecting it to DMHC regulations, and that it would be "facially inequitable for [p]laintiff to
be forced to sue Texas or New York[-]based organizations in their home [s]tates" since each
patient whose claim is at issue is a California resident.

      Plaintiff's assertion that "the allegations set forth in the complaint control,"
notwithstanding, the law does not require this court to accept at face value plaintiff's argument
that defendant is a health care service plan regulated by the DMHC and subject to the Knox-
Keene Act. (See *Evans v. City of Berkeley*, *supra*, 38 Cal.4th at p. 6 [on demurrer we do not
accept the truth of contentions, deductions or conclusions of fact or law].) Moreover, as the
issue of misjoinder was not raised by defendant in its demurrer to the operative complaint, nor
was it addressed or ruled on by the trial court in sustaining the demurrer, it is unclear why
plaintiff asserts this argument at this time. Nonetheless, given that this argument again hinges
on plaintiff's position that defendant should be classified as a health care plan and subject to the
Knox-Keene Act, we reiterate our conclusion that the demurrer was properly sustained. (See
*Williams*, *supra*, 72 Cal.App.4th at p. 731.)

### *Leave to Amend*

      "'Generally it is an abuse of discretion to sustain a demurrer without leave to amend if
there is any reasonable possibility that the defect can be cured by amendment. [Citation.] . . .
However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion.
[Citations.] Plaintiff must show in what manner he can amend his complaint and how that
amendment will change the legal effect of his pleading. [Citation.]' [Citation.]" (*Goodman v.
Kennedy*, *supra*, 18 Cal.3d at p. 349.) "The onus is on the *plaintiff* to articulate the 'specifi[c]
ways' to cure the identified defect, and absent such an articulation, a trial or appellate court
may grant leave to amend 'only if a potentially effective amendment [is] both apparent and
consistent with the plaintiff's theory of the case.' [Citation.]" (*Shaeffer v. Califia Farms, LLC*
(2020) 44 Cal.App.5th 1125, 1145, emphasis in original.)

      Plaintiff contends that leave to amend should have been granted to permit him to "attach
the evidence of coverage to the complaint for the trier of fact to confirm that [UHC was a health

care service plan]," and to "add a DOE to the complaint . . . [that] is in fact regulated by the
DMHC and is obligated by the [Knox-Keene Act] to pay quantum meruit, . . ."

We are not persuaded. With regard to the first proposed amendment, plaintiff fails to
show how said amendment would state a cause of action under the Knox-Keene Act or impose
any obligation pursuant to a quantum meruit theory. This proposed amendment continues to be
premised on plaintiff's position as to what he believes the law *should* require of defendant, and
not what it actually does. With regard to the second proposed amendment, plaintiff's original
and first amended complaint both listed "DOES 1 through 20, inclusive." Granting leave to
amend so that plaintiff can "add [another] DOE" does not amount to a "specific amendment[]"
that would "cure the identified defect, . . ." (*Shaeffer v. Califia Farms, LLC*, *supra*, 44
Cal.App.5th at p. 1145.) Plaintiff has failed to carry his burden, "[n]or do we perceive on our
own an 'apparent' 'potentially effective amendment' that is 'consistent with the plaintiff's
theory of the case.' [Citation.]" (*Ibid.*)

We also note that plaintiff amended his original complaint after defendant filed its first
demurrer in which it raised the same substantive arguments, and did not cure any of these
defects at that time. We view plaintiff's election not to cure these defects previously, and his
failure to articulate a potentially effective amendment "as precluding a finding that further
possible amendments are apparent and consistent with [his] theory of the case. [Citation.]"
(*Shaeffer v. Califia Farms, LLC*, *supra*, 44 Cal.App.5th at p. 1145; accord, *Otworth v. Southern
Pacific Transportation Co.* (1985) 166 Cal.App.3d 452, 457 ["When a plaintiff elects not to
amend the complaint, it is presumed that the complaint states as strong a case as is possible"].)

Plaintiff has not alleged any facts that remove this dispute from the confines of the CDI
regulatory regime and subject it to the Knox-Keene Act and/or DMHC regulatory regime.
Moreover, he does not demonstrate that he "could do so if given another opportunity." (*Pacific
Bay Recovery, Inc. v. Cal. Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 217.) Given
that plaintiff's additional allegations rely on the applicability of the Knox-Keene Act, they do
not give rise to any valid cause of action. The trial court did not abuse its discretion in
denying plaintiff leave to amend his first amended complaint. (See *Goodman v. Kennedy*,
*supra*, 18 Cal.3d at p. 349.)

## DISPOSITION

The judgment of dismissal is affirmed. Defendant is awarded its costs on appeal.


_____
Guillemet, J.

We concur:


_____                    _____
Kumar, Acting P. J.                                 Ricciardulli, J.

Andrew John Holmer (Attorney for Defendant/Respondent)
515 S Flower Street
40th Floor
Los Angeles, CA 90071

Jonathan Nissanoff (Attorney for Plaintiff/Appellant)
1230 S Camden Drive
Los Angeles, CA 90035

GEN-16-Small Claims Portal 3-PJ

**FILED**
Superior Court of California
County of Los Angeles

**APR 13 2016**

Sherri R. Carter, Executive Officer/Clerk
By_____,Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| In re Small Claims Jurisdiction Cases Calendared in the Los Angeles County Superior Court | ) ) ) ) ) ) | GENERAL ORDER re SMALL CLAIMS PROCEDURES: NOTICE of WEB PORTAL AVAILABILITY for INTERPRETER REQUESTS (Effective April 13, 2016) |

TO EACH PARTY:

In order to expedite the availability of interpreters at hearings on small claims cases, IT IS HEREBY ORDERED that each Small Claims plaintiff shall, along with the *Plaintiff's Claim and Order to Go to Small Claims Court*, serve all named defendants with the *Notice of the Availability of Web Portal for Interpreter Requests*; this notice or flyer generally informs litigants that the Los Angeles County Superior Court provides interpreter services in small claims hearings at no cost to parties with limited English proficiency and that Spanish language interpreters are readily available in all courtrooms where Small Claims hearings are held. The notice or flyer will be provided to the claimant at the time the Small Claims action is filed, if filed at the clerk's office, and will also be posted on the Los Angeles County Superior Court internet website (http: //www.lacourt.org/). Plaintiff(s) must then indicate service of the *Notice of Availability of Small Claims Web Portal for Interpreter Requests* on line 3(d) of the Proof of Service form (Form SC – 104) filed with the court.

Effective immediately, this General Order supersedes any previous order related to service of the *Notice of Availability of Web Portal for Interpreter Requests* and is to remain in effect until otherwise ordered by the Presiding Judge.

DATED: April 13, 2016

CAROLYN B. KUHL
PRESIDING JUDGE

1

GENERAL ORDER – SMALL CLAIMS PORTAL

## Notice of Availability of Small Claims Web Portal for Interpreter Requests

The Los Angeles Superior Court provides interpreter services at no cost to parties with limited English proficiency in Small Claims hearings. Spanish language interpreters are readily available in all courtrooms where Small Claims hearings are held. If you require a Spanish interpreter, please let the courtroom staff know about your need, on the day of your hearing. Limited English proficient individuals who speak a language other than Spanish may request an interpreter in advance of their court hearing via the Court's Web Portal for Interpreter Requests http://www.lacourt.org/irud/UI/index.aspx?ct=SC. While the Court will make every effort to locate an interpreter for the date and time of your hearing, it cannot guarantee that one will be immediately available. If you have questions about language access services, please contact LanguageAccess@LACourt.org

### 关于小额索赔传译员申请门户的可用性通知

在小额索赔庭审中，洛杉矶高等法院为英语能力有限的各方人士提供免费传译员服务。在举行小额索赔庭审的所有法庭中，均有现成的西班牙语传译员。如果您需要西班牙语传译员，请在您的庭审当日将您的需求告知法庭工作人员。在庭审前，英语能力有限的非西班牙语人士可通过法院的传译员申请网络门户 http://www.lacourt.org/irud/UI/index.aspx?ct=SC 提前申请传译员。法院会尽力按您的庭审日期和时间安排传译员，但法院无法保证能够即时提供传译员。如果您有关于语言服务的疑问，请联系LanguageAccess@LACourt.org.

### 통역사 신청을 위한 소액 청구 웹 포털 이용 통지

로스앤젤레스 상급법원은 소액 청구 심리에서 영어가 능숙하지 않은 당사자들에 대해 통역 서비스를 무료로 제공합니다.

스페인어 통역사는 소액 청구 심리가 열리는 모든 법정에서 손쉽게 제공할 수 있습니다. 스페인어 통역사가 필요한 경우에는 심리가 열리는 날에 법정 직원에게 알려 주십시오. 스페인어가 아닌 다른 언어를 사용하고 영어가 능숙하지 않은 개인들은 통역사 신청을 위한 법원 웹 포털을 통해서 재판일 전에 통역사를 신청할 수 있습니다(http://www.lacourt.org/irud/UI/index.aspx?ct=SC). 법원은 심리 날짜와 시간에 통역사를 찾기 위해 모든 노력을 기울일 것이나, 통역사를 즉시 제공한다는 것을 보장할 수 없습니다. 언어 접근 서비스에 대한 질문이 있으시면, 다음의 이메일 주소로 연락해 주십시오: LanguageAccess@LACourt.org.

### Aviso de disponibilidad del Portal web de reclamos menores para solicitar intérpretes

La corte superior de Los Ángeles brinda servicios de intérprete sin cargo para audiencias de reclamos menores a las partes que tienen conocimientos limitados de inglés. Se dispone de intérpretes de español en todas las salas donde se realizan audiencias de reclamos menores. Si necesita un intérprete de español, infórmele al personal de la sala del juzgado el día de su audiencia. Los individuos con conocimientos limitados de inglés que hablan un idioma que no sea el español pueden solicitar un intérprete antes de la audiencia en la corte por medio del Portal web de la corte para solicitar intérpretes (http://www.lacourt.org/irud/UI/index,aspx?ct=SC). La corte hará el mayor esfuerzo posible para programar un intérprete para la fecha y hora de su audiencia; sin embargo, no la podemos garantizar que haya uno disponible en forma inmediata. Si tiene alguna pregunta sobre los servicios de acceso lingüístico, envíe un mensaje a LanguageAccess@LACourt.org.

### Ծանուցագիր Թարգմանչական ծառայությունների խնդրանք ներկայացնելու համար Նախատեսված Փոքր հայցերի առցանց դարպասի տուժաբերության մասին

Լոս Անջելըսի Առաջին դատարանն առաջարկում անվճար թարգմանչական ծառայություններ է տրամադրում Փոքր հայցերի վարույթներին' անգլերենին սահմանափակ իմացություն ունեցող կողմերին: Իսպաներենին թարգմանչի առկայությունը Փոքր հայցերի լսումնեն անգլացած բոլոր դատարաններում ապահովված է: Եթե իսպաներենին թարգմանչի կարիք ունեք, ապա խնդրում ենք այդ մասին Ձեր լսման օրը տեղեկացնել դատարանի դահլիճի աշխատակիցներին: Անգլերենին սահմանափակ իմացություն ունեցող անձինք, ովքեր խոսում են ոչ իսպաներենին, այլ մեկ այլ լեզվով, կարող են բարգմանչի խնդրանք ներկայացնել նախքուր' նախնան իրենց լսման օրը, Դատարանին' Թարգմանչական ծառայության խնդրահմնի համար Նախատեսված առցանց դարպասի միջոցով' http://www.lacourt.org/irud/UI/index.aspx?ct=SC: Թեև դատարանն ամեն ինչ կանի Ձեր լսման օրն ու ժամին բարգմանչի ներկայություն ապահովելու համար, սակայն դատարանը չի երաշխավորում, որ նման ներկայություն անմիջապես հնարավոր կլինի ապահովել: Լեզվական մատչելիության ծառայություններենի վերաբերյալ հարցերով խնդրում ենք դիմել LanguageAccess@LACourt.org

### Thông Báo về Cổng Vào Khu Kiện Nhỏ để Xin Cung Cấp Thông Dịch Viên

Tòa Thượng Thẩm Los Angeles cung cấp dịch vụ thông dịch viên miễn phí cho những bên kiện có khả năng Anh Ngữ giới hạn trong những vụ Kiện Nhỏ. Có sẵn thông dịch viên tiếng Tây Ban Nha tại tất cả các phòng xử Vụ Kiện Nhỏ. Nếu quý vị cần thông dịch viên tiếng Tây Ban Nha, xin cho nhân viên phòng xử biết về nhu cầu của quý vị, vào ngày xử. Người có khả năng Anh Ngữ giới hạn và nói một ngôn ngữ không phải tiếng Tây Ban Nha có thể xin cung cấp thông dịch viên trước ngày có phiên tòa của họ qua Cổng Web của Tòa cho Các Yêu Cầu Cung Cấp Thông Dịch Viên http://www.lacourt.org/irud/UI/index.aspx?ct=SC. Tuy tòa sẽ nỗ lực để tìm một thông dịch viên cho ngày giờ phiên tòa của quý vị, tòa không thể bảo đảm sẽ có ngay. Nếu quý vị có thắc mắc về các dịch vụ ngôn ngữ, xin liên lạc với LanguageAccess@LACourt.org

2024-SJ-006-00

**FILED**
Superior Court of California
County of Los Angeles

SEP 2 0 2024

David W. Slayton, Executive Officer/Clerk of Court
By: C. Guerrero, Deputy

# SUPERIOR COURT OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE SMALL CLAIMS PROTOCOL FOR EXCHANGE AND SUBMISSION OF EVIDENCE | SECOND AMENDED STANDING ORDER RE: EVIDENCE EXCHANGE |

Pursuant to California Code of Civil Procedure section 116.520, parties in a Small Claims matter have the right to present evidence and witnesses in support of their respective positions at the hearing on the case.

The Court encourages parties in Small Claims cases to appear remotely via LA CourtConnect (https://www.lacourt.org/lacc). To facilitate remote appearances, this Order describes how parties are to exchange of evidence and how they will submit evidence to the court in advance of the hearing.

**Whether appearing remotely or in person** any party in a Small Claims case that wishes to submit evidence to support their position is ordered to either:

1. Upload their evidence to the Court's Digital Evidence System (DES) at https://www.lacourt.org/digitalevidence at least ten (10) days prior to the scheduled hearing date and share the evidence with the other party or parties in the case. Any evidence uploaded to the portal shall be available to the opposing side until the conclusion of the hearing. A party's failure to timely exchange and submit evidence to the court may result in the court not considering the evidence.

1

2.  Alternatively, a party may send a copy of any evidence it wants the court to consider to the court and to the other party or parties in the case, by any means that ensures their receipt of the evidence at least ten (10) days in advance of the hearing. Upon request, the party must be able to provide the court proof of sending the evidence.

3.  When submitting evidence, each party must follow the procedures set forth below:

     a.  Each party must complete form LASC CIV 278 Exchange and Submission of Evidence (Small Claims). The form must be placed inside the envelope with the evidence. The form is attached and is available on the court's website at http://www.lacourt.org.

     b.  Each party must complete a mailing label and attach it to the outside of the envelope. The mailing label must contain the following information (a) case name; (b) case number; (c) date of hearing; (d) name of party submitting the evidence; and (e) courtroom number or department number in which the case will be heard. The mailing label form LASC CIV 279 is attached and is available on the court's website at http://www.lacourt.org.

     c.  Physical evidence will be destroyed after the ruling unless parties provide a self-addressed envelope with sufficient pre-paid postage at the time of submission of evidence to the court. Digital evidence will be purged from the portal 60 days after the hearing has concluded and a ruling has been entered.

2

1          d.   A list of the addresses for the courthouses and courtrooms that hear

2            Small Claims matters is available at

3            http://www.lacourt.org/couthouse/mode/division/smallclaims

4

5         The plaintiff is further ordered to serve a copy of this 2nd Amended Standing Order

6 with the Plaintiff's Claim and ORDER to Go to Court (SC-100) or the Plaintiff's Claim

7 and ORDER to Go to Court (COVID-19 Rental Debt) (SC-500) along with all other

8 information sheets as required.

9

10 IT IS SO ORDERED.

11

12 Dated: SEPTEMBER _20_ , 2024            _____

13                          Judge Michelle Williams Court

                              Supervising Judge, Civil Division

14

15

16

17

18

19

20

21

22

23

24

25

26

27

3

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**PUBLIC NOTICE**

www.lacourt.org  |  publicinfo@lacourt.org  |  @LASuperiorCourt

**COMMUNICATIONS OFFICE**

**Media Relations**
**publicinfo@lacourt.org**

**FOR IMMEDIATE RELEASE:**
**September 20, 2024**

# SUPERIOR COURT OF LOS ANGELES COUNTY TO PILOT DIGITAL EVIDENCE SYSTEM IN SELECT SMALL CLAIMS COURTROOMS BEGINNING MONDAY, SEPTEMBER 23

### *Digital Evidence System Pilot Will Launch in Department 7 at the Compton Courthouse and in Department 304 at the Beverly Hills Courthouse*

The Superior Court of Los Angeles County will pilot a Digital Evidence System in Small Claims Department 7 at the Compton Courthouse and Small Claims Department 304 at the Beverly Hills Courthouse beginning Monday, September 23. The Digital Evidence System will improve efficiencies and streamline the court experience for Small Claims litigants.

Litigants in Small Claims cases are required to exchange evidence in advance of their hearing, which they have traditionally done by producing and mailing copies to the opposing side. While that option remains available, beginning Monday, September 23, Small Claims litigants with matters in the pilot departments may upload and share digital evidence directly within the Digital Evidence System in advance of their hearings. Recognizing that not all litigants have access to a stable home internet connection, the Digital Evidence System, along with a scanner, will be available at kiosks at both the Beverly Hills and Compton Courthouse Clerks' Offices.

The Digital Evidence System Pilot will have the following capabilities:

- Allow litigants to upload and share digital evidence in lieu of exchanging physical copies.
- Allow litigants to upload a variety of file formats including photos, videos and documents prior to a scheduled hearing.
- Allow litigants to share their evidence via an email sent to the opposing parties.
- Assign a unique exhibit number for easy reference and to aid in the presentation of the evidence at the hearing.
- Produce an Exhibit Receipt with thumbnail photos of the evidence.
- Provide judicial officers and parties with access to view the digitally uploaded evidence.

More information about how to use the Digital Evidence System, including an instructional video tutorial, answers to frequently asked questions, technological specifications, and more, is available on the Digital Evidence System Pilot website, www.LACourt.org/DigitalEvidence. Litigants with matters in Small Claims pilot departments will be able to create an account and begin uploading evidence beginning Monday, September 23. Litigants in pilot departments will also be informed of this new option via notice from the Court at the time of filing.

The Court will use data and feedback from this pilot to expand the Digital Evidence System Pilot to remaining Small Claims courtrooms and additional case types and courtrooms in the future.

# Exchange and Submission of Evidence (Small Claims)

*Fill in court name and address*
Superior Court of California,
County of Los Angeles

**Important:** This form is to be used to submit evidence to the court and the opposing party. Read the other side of this form before you fill out the form.

Pursuant to Code of Civil Procedure section 116.520, parties in a Small Claims matter have the right to present evidence and witnesses at the hearing on the matter in support of their respective positions.

Each party who wishes to submit evidence is ordered to exchange and submit evidence to the court at least ten (10) days prior to the hearing and show proof of compliance (1st Amended Standing Order Re: Evidence Exchange 2020-SJ-015-01).

A party's failure to comply may result in the evidence not being considered by the court.

Case Number:

Case Name:

My Name is:_____

My Mailing Address is:_____

_____

I am a (check one): ☐ Plaintiff    ☐ Defendant in this case.

My hearing is now scheduled on

(date) _____

at (time) _____

in Department _____

**INSTRUCTIONS:**
**List each item of evidence separately and briefly describe it. Please provide copies only, as evidence will be returned only if a self-addressed envelope with sufficient pre-paid postage is submitted. If you need more space, attach one sheet of paper.**

1._____

2._____

3._____

4._____

5._____

The parties listed below have been served with a copy of my evidence.

Name:_____was served on (date)_____

check one) ☐ mail    ☐ personal delivery. Address of service: _____

_____

Name:_____was served on (date) _____

by (check one) ☐ mail    ☐ personal delivery. Address of service: _____

_____

LASC CIV 278 Rev. 07/23
For Mandatory Use

**Instructions for Form LASC CIV 278, Exchange of Evidence (Small Claims)** *(This form must be used to submit evidence to the court)*

To facilitate remote appearances, evidence must be exchanged between or among the parties and submitted to the court in advance of the hearing pursuant to 1st Amending Standing Order Re: Evidence Exchange (effective September 4, 2020).

**Each party who wishes to appear remotely must do the following:**

1. Send a copy of any evidence the party wishes the court to consider to the other party or parties in a manner that ensures receipt of the evidence at least <u>ten</u> (10) days prior to the hearing date;
2. Send a copy of any evidence the party wishes the court to consider to the court in a manner that ensures receipt of the evidence at least <u>ten</u> (10) days prior to the hearing date;
3. Place a copy of the evidence in an envelope;
4. Place a completed copy of this form inside the envelope;
5. Enclose a self-addressed envelope with sufficient pre-paid postage in the envelope, if you want the evidence returned to you after the hearing;
6. Seal the envelope;
7. COMPLETE THE MAILING LABEL AND ATTACH TO THE ENVELOPE;
8. Mail to the clerk of the court at the address of the courthouse where your case is pending or place in the Civil drop-off box located outside the courthouse. The courthouse addresses are listed below;
9. If requested, the party must provide proof of sending the evidence to the court and to the opposing party or parties;
10. A remotely-appearing party's failure to exchange evidence with the opposing party and submit evidence to the court with proof of mailing in advance of the hearing and as set forth herein, may result in the evidence not being considered by the court.

Michael Antonovich Courthouse
Antelope Courthouse
Small Claims Courtroom
42011 4th Street West
Lancaster, CA 93534

Bellflower Courthouse
Small Claims Courtroom
10025 Flower Street
Bellflower, CA 90706

Beverly Hills Courthouse
Small Claims Courtroom
9355 Burton Way
Beverly Hills, CA 90210

Chatsworth Courthouse
Small Claims Courtroom
9425 Penfield Avenue
Chatsworth, CA 91311

Compton Courthouse
Small Claims Courtroom
200 West Compton Blvd
Compton, CA 90220

Inglewood Courthouse
Small Claims Courtroom
One Regent Street
Inglewood, CA 90301

Governor George Deukmejian
Long Beach Courthouse
Small Claims Courtroom
275 Magnolia Avenue
Long Beach, CA 90802

Pasadena Courthouse
Small Claims Courtroom
300 East Walnut
Pasadena, CA 91101

Stanley Mosk Courthouse
Small Claims Courtroom
111 North Hill Street
Los Angeles, CA 90012

Van Nuys Courthouse
Small Claims Courtroom
6230 Sylmar Avenue
Van Nuys, CA 91401

West Covina Courthouse
Small Claims Courtroom
1427 West Covina Parkway
West Covina, CA 91790

From: _____

_____

_____


To: _____

_____

_____


Date: _____ Time: _____

Department: _____

Case Number: _____


LASC CIV 279 NEW 07/20
For Mandatory Use

## Small Claims Mailing Label


From: _____

_____

_____


To: _____

_____

_____


Date: _____ Time: _____

Department: _____

Case Number: _____


LASC CIV 279 NEW 07/20
For Mandatory Use

## Small Claims Mailing Label



**FILED**
Superior Court of California
County of Los Angeles

DEC 07 2020

Sherri R Carter, Executive Officer/Clerk

2020-SJ-019-00

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE MEET AND CONFER IN SMALL CLAIMS CASES | **STANDING ORDER** |

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY, IF ANY:

PLEASE TAKE NOTICE that pursuant to California Code of Civil Procedure §§ 128 and 187; California Rules of Court, rule 10.603; and the inherent powers of the Court (In re: Reno (2012) 65 Cal.4th 428, 522), the Court HEREBY ORDERS AS FOLLOWS:

Each Plaintiff is ordered to register for Online Dispute Resolution (ODR) at https://my.lacourt.org/odr/small-claims within five calendar days of case filing.

Each Defendant is ordered to register for ODR at https://my.lacourt.org/odr/small-claims within five calendar days of receiving the Plaintiff's Claim and Order to Go to Small Claims Court.

Once all parties have registered for ODR, each party is ordered to participate in good faith settlement discussions through the ODR website. The settlement discussions must be completed at least two court days prior to the date set for trial. Settlement forms may be completed, signed, and filed through the ODR website.

///

1

STANDING ORDER FOR MEET AND CONFER IN SMALL CLAIMS CASES

1            The plaintiff is further ordered to serve a copy of the following documents on the other party or

2   parties in the matter:  (1) this Standing Order, (2) a copy of the Plaintiff's Claim and Order to Go to

3   Court (Form SC-100), and (3) a copy of the Notice to use ODR (LASC Form SMCL 018).

4   IT IS SO ORDERED.

5

6   Date: _____12 / 7 / 2020_____

7                              Judge Samantha P. Jessner
                                  Supervising Judge, Civil Division

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STANDING ORDER FOR MEET AND CONFER IN SMALL CLAIMS CASES

# EXHIBIT B

Gavin Newsom, Governor
State of California
Health and Human Services Agency
**DEPARTMENT OF MANAGED HEALTH CARE**
**980 9th Street, Suite 500**
**Sacramento, CA 95814**
**Phone: 916-324-8176 | Fax: 916-255-5241**
**www.HealthHelp.ca.gov**

April 16, 2024

**Via Email: agenovese@seyfarth.com**

Amanda Genovese
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018-1405

Dear Ms. Genovese:

I am the Chief Counsel of the California Department of Managed Health Care (DMHC). The DMHC exercises jurisdiction over health care service plans that collectively cover more than 29.7 million Californians, which constitutes more than 96 percent of the state-regulated commercial and public health enrollment in California. The DMHC is the nation's largest state regulator of health insurance coverage and licenses and regulates 143 health care service plans. Those health plans are subject to the California Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act), which is codified at California Health and Safety Code section 1340 et. seq.

However, California has a unique health coverage regulatory system because, although the DMHC regulates the vast majority of coverage in this state, the California Department of Insurance regulates a portion of the health insurance market. Specifically, the Department of Insurance regulates *health insurers*, which by law are not health plans and are not subject to the Knox-Keene Act.

The DMHC regulates several health plans owned by or associated with United Healthcare. However, the Department of Insurance also regulates a number of United Healthcare insurers. Those insurers are not regulated by the DMHC and are not subject to the Knox-Keene Act.

Consistent with information publicly available on the DMHC's website, as confirmed by business records maintained in the ordinary course of business, the following entities are not regulated by the DMHC nor licensed to operate as health care service plans under the Knox-Keene Act:

-   United HealthCare Services, Inc.

*Protecting the Health Care Rights of More Than 29.7 Million Californians*
*Contact the DMHC Help Center at 1-888-466-2219 or www.HealthHelp.ca.gov*

Amanda Genovese                                                    April 16, 2024
                                                                        Page 2


- UnitedHealthcare Insurance Company

- UMR, Inc.

- UnitedHealthcare Service LLC

If you have questions or need more information, please do not hesitate to contact me.


Sincerely,

*Sarah Ream*

Sarah Ream
Chief Counsel
California Department of Managed Health Care

Amanda Genovese                                                              April 16, 2024
                                                                                    Page 3

# EXHIBIT C

1    SEYFARTH SHAW LLP
     Kathleen Cahill Slaught (SBN 168129)
2    kslaught@seyfarth.com
     560 Mission Street, 31st Floor
3    San Francisco, California 94105
     Telephone:    (415) 397-2823
4    Facsimile:    (415) 397-8549

5    Ryan R. Tikker (SBN 312860)
     rtikker@seyfarth.com
6    2029 Century Park East, Suite 3500
     Los Angeles, CA 90067
7    Telephone: (310) 277-7200
     Facsimile: (310) 201-5219

8

9    Attorneys for Defendant
     UNITEDHEALTHCARE INSURANCE COMPANY

10

11                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                          COUNTY OF LOS ANGELES

13

14   DR. JOHN ATTENELLO MD APC,              Case No. 25BHSC00190

15                   Plaintiff,              **NOTICE OF FILING NOTICE OF
                                             REMOVAL TO FEDERAL COURT**
16           v.
                                             Action Filed: February 10, 2025
17   UNITEDHEALTHCARE INSURANCE
     COMPANY,

18

19                   Defendant.

20

21

22

23

24

25

26

27

28

—————————————————————————————————————————————
                  NOTICE OF FILING NOTICE OF REMOVAL

**TO PLAINTIFF AND ALL ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that a Notice of Removal (attached hereto as **Exhibit 1**, without exhibits) of this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California (the "Federal Court") was filed on this 13th day of March 2025, by Defendant UnitedHealthcare Insurance Company ("Defendant") with the Clerk of the Federal Court, thereby effectuating removal of this action.

DATED:  March 13, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Kathleen Cahill Slaught*
    Kathleen Cahill Slaught
    Ryan Tikker
    Attorneys for Defendant
    UNITEDHEALTHCARE INSURANCE
    COMPANY

NOTICE OF FILING NOTICE OF REMOVAL